This appeal arises from a lawsuit brought by the parent of a deceased minor against her attending physicians, claiming damages for wrongful death, breach of contract, fraud, and outrage. From a summary judgment entered in favor of the defendants on all counts, the plaintiff has brought this appeal. We affirm.
Pamela Gallups, the minor daughter of the plaintiff, William Gallups, was involved in an automobile accident on June 27, 1980. Although the exact nature and extent of her injuries are not indicated by the parties to this appeal, the record shows that she was diagnosed as suffering from a closed head trauma and other bodily trauma. Upon admission to the University of Alabama Hospital in Birmingham, Pamela was treated by Drs. Gregory Cotter, Richard Morawetz, and David Silver. Dr. Ricardo Brown, a nonparty to this litigation, initially diagnosed Pamela as "brain dead" on June 28, 1980.[1] Dr. Morawetz, a specialist in the field of neurosurgery, was asked to confirm this diagnosis. Following an examination of the patient, a review of her medical chart, and a review of her electroencephalogram (EEG) readings, Dr. Morawetz, on June 28, 1980, determined that Pamela was clinically brain dead. This diagnosis was based on a lack of cerebral responsiveness over a period of hours and EEG recordings that showed no brain activity. This information was communicated by Dr. Morawetz to Pamela's parents.
On June 29, 1980, according to deposition testimony of Dr. Morawetz, another EEG reading was taken, and it showed no electrocerebral activity. Dr. Morawetz also performed another neurological examination, and it showed that Pamela's brain stem was nonfunctional.
On June 30, 1980, Dr. Morawetz reconfirmed his diagnosis of "brain death," following repeated neurological examinations and tests that indicated no change in the patient's condition. This information was also communicated to Pamela's parents. The condition of the patient was also discussed with several other neurosurgeons, and there was no disagreement, according to Dr. Morawetz, with the diagnosis that Pamela was brain dead.
Dr. Morawetz again examined Pamela on July 1, 1980, and there was no reported change in her condition. A third EEG was also obtained on that date, indicating total and irreversible brain death. Dr. Morawetz again discussed Pamela's condition with her family, and they requested that life support systems not be removed.
The neurological examination was repeated on July 2, 1980, and Pamela was again diagnosed as clinically brain dead. Following more discussion with the patient's family, Dr. Morawetz was again told of their wishes that the life support systems be maintained.
On July 3, 1980, a repeat examination was performed, with no change in the diagnosis of brain death. On July 4, 1980, *Page 587 
Pamela was examined by Dr. Harsh, a nonparty, and he stated that she was brain dead by all criteria. The examinations were repeated by Dr. Morawetz on July 5, 1980, resulting in the same diagnosis as before. Following another discussion with Pamela's family, Dr. Morawetz was again informed of their desire that the life support systems be maintained.
Dr. Morawetz repeated his neurological examination on July 8, 1980, reconfirming his diagnosis that there was an absence of any brain function whatsoever. Again informing the family that Pamela was in a state of "brain death," Dr. Morawetz recommended that the life support systems be removed. According to deposition testimony of Dr. Morawetz, the family discussed this recommendation and expressed their agreement. Gallups denies that the family gave consent to remove the ventilator. The artificial ventilation system was removed from the patient on July 8, 1980. Dr. Morawetz testified on deposition, however, that the patient had been pronounced dead several days prior to this date.
Gallups, individually, and as personal representative and administrator of the estate of Pamela, commenced this action on July 7, 1982, in the Circuit Court of Jefferson County, seeking $5,000,000 in damages. Named as defendants were Drs. Cotter, Morawetz, and Silver.[2] The complaint alleged that on or about July 8, 1980, the defendants negligently treated and cared for Pamela, that the defendants did not follow the proper procedures for determining that Pamela was "brain dead," that the defendants breached express and implied contracts in the care of Pamela, and that the defendants represented to Gallups that the life support systems to which Pamela was attached would not be withdrawn without the consent of Pamela's family. A fourth count was added to the complaint by amendment on February 20, 1986. By this amendment, Gallups, individually, claimed that the defendants, in removing the life support systems from Pamela's body contrary to the wishes of her family, committed the tort of outrage. The complaint, as amended, sought an additional $5,000,000 in compensatory and punitive damages.
On July 6, 1987, in response to a motion for summary judgment filed by Drs. Morawetz and Silver on April 22, 1986, the trial court entered summary judgment in favor of all remaining defendants on all counts of the complaint. This appeal by Gallups followed. The sole basis of this appeal is the summary judgment as it relates to the claim for the tort of outrage; the summary judgment is not contested as to the other counts.
As grounds in support of their motion for summary judgment, Drs. Morawetz and Silver asserted, inter alia, that a physician who removes artificial means of maintaining cardiac and respiratory function of a person determined to be medically and legally dead, in accordance with Code 1975, § 22-31-1 et seq., is immune from liability in any civil action. These statutes provide, in pertinent part:
 "§ 22-31-1. Standards and procedures for determination of death generally.
 "(a) A person is considered medically and legally dead if, in the opinion of a medical doctor licensed in Alabama, based on usual and customary standards of medical practice, in the community, there is no spontaneous respiratory or cardiac function and there is no expectation of recovery of spontaneous respiratory or cardiac function.
 "(b) In the case when respiratory and cardiac function are maintained by artificial means, a person is considered medically and legally dead if, in the opinion of a medical doctor licensed in Alabama, based on usual and customary standards of medical practice in the community for the determination by objective neurological testing of total and irreversible cessation of brain function. Death may be *Page 588 pronounced in this circumstance before artificial means of maintaining respiratory and cardiac function are terminated. In the case described in this subsection, there shall be independent confirmation of the death by another medical doctor licensed in Alabama. (Acts 1979, No. 79-165, p. 276, § 1.)
". . . .
"§ 22-31-4. Liability for acts.
 "A person who acts in accordance with the terms of this chapter is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act. (Acts 1979, No. 79-165, p. 276, § 5.)"
Ala. Code 1975 (emphasis supplied).
It is clear, under the facts of this case, that the attending physicians' determination of death met the specific criteria of the aforementioned statute.[3] The statute, moreover, clearly contemplates the termination of life support systems upon a determination of death. However, we need not decide whether the outrage claim is barred by immunity under § 22-31-1 et seq., because we determine that the summary judgment was proper on other grounds.
A cause of action for the tort of outrage was first recognized by this Court in the case of American RoadServ. Co. v. Inmon, 394 So.2d 361 (Ala. 1980). The required elements in a cause of action for this tort have been explicitly noted:
 "To be actionable under the tort of outrage, the conduct involved must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized society.' American Road Service Company v. Inmon, 394 So.2d 361 at 364 (Ala. 1980) (quoting Restatement (Second) of Torts § 46, comment d, at 73 [1965]). This court described the tort as:
 " 'The intentional or reckless tort of outrageous conduct causing severe emotional distress, as proposed by the American Law Institute's Restatement (Second) of Torts § 46 (1948):
 " ' "(1) One who by extreme and outrageous conduct intentionally or recklessly
causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." ' "
"American Road Service Company v. Inmon, at 362."Cates v. Taylor, 428 So.2d 637, 640 (Ala. 1983). (Emphasis supplied.)
As previously indicated, a motion for summary judgment was filed by Drs. Morawetz and Silver on April 22, 1986. Aside from the assertion of immunity pursuant to § 22-31-1 et seq., this motion was based on Gallup's complaint, the answers of the defendants filed in response to the complaint, the answers of the defendants to interrogatories propounded by Gallups, the deposition testimony of Dr. Silver, and the medical records of Pamela, the decedent. This motion was subsequently amended to include the deposition testimony of Dr. Morawetz. A motion for summary judgment was then filed on April 25, 1986, by Dr. Cotter. By reference, this motion adopted the same grounds set forth in the motion for summary judgment filed by Drs. Morawetz and Silver.
A motion was filed on June 11, 1987, by Gallups in opposition to the motion for summary judgment. Offered therein as opposing evidence were all of the pleadings filed in the case and a previously submitted affidavit of Gallups. This affidavit stated in pertinent part: "At no time did my family state to any member of the medical team treating my daughter . . . that the family wished the life support systems to be withdrawn." (R. 66) We find that the defendants were entitled to summary judgment because neither the affidavit of Gallups, nor any of the other materials submitted in opposition to the motion, are sufficient to raise a genuine issue of material fact so as *Page 589 
to bring the action(s) of the defendants within the conduct proscribed by Inmon, supra.
A motion for summary judgment is property granted where the moving party has demonstrated that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; Lolley v.Howell, 504 So.2d 253 (Ala. 1987); Cantrell v. CityFed. Sav. Loan Ass'n, 496 So.2d 746 (Ala. 1986);Osborn v. Johns, 468 So.2d 103 (Ala. 1985). Moreover, for a party to be entitled to summary judgment, the pleadings and affidavits, when viewed in a light most favorable to the nonmoving party, must establish that there is no scintilla of evidence to raise a genuine issue of material fact, and it must appear that the moving partyis entitled to a judgment as a matter of law. Rule 56;Gurley ex rel. Gurley v. American Honda Motor Co.,505 So.2d 358 (Ala. 1987); Town of Mulga v. Maytown,502 So.2d 731 (Ala. 1987). On a motion for summary judgment, the moving party has the burden of negating the existence of any issue of material fact, and, if there is a scintilla of evidence to support the position of the nonmoving party, then summary judgment is inappropriate. Ryan v. CharlesTownsend Ford, Inc., 409 So.2d 784 (Ala. 1981);Palmer v. Perry County Bd. of Educ., 496 So.2d 2
(Ala. 1986). The proposition is well understood, however, that a party adverse to a motion for summary judgment, which is supported by affidavits or other testimony, may not rest upon the mere allegations or denials of the original pleadings, but rather must set forth, by affidavit or otherwise, sufficient facts to show a genuine issue for trial. Nettles v. Henderson, 510 So.2d 212 (Ala. 1987); Whatley v. Cardinal Pest Control,388 So.2d 529 (Ala. 1980); Johnston v. Central Bank of theSouth, 501 So.2d 1237 (Ala.Civ.App. 1987). If he fails to do so, summary judgment, if appropriate, will be entered against him. Turner v. Systems Fuel, Inc.,475 So.2d 539 (Ala. 1985).
In the instant case, the evidentiary material offered in opposition to the motion for summary judgment is devoid of any indication that the defendants acted intentionally orrecklessly to cause the emotional distress complained of. Nor is there any evidence that the defendants had a desire to inflict extreme emotional distress or that they knew severe emotional distress was likely to result from their actions. See Peddycoart v. City of Birmingham,392 So.2d 536 (Ala. 1980). At the most, there is a material issue of disputed fact as to whether consent was given by Pamela's family to remove her from the life support systems following the determination of death. But this is clearly insufficient, under the criteria set forth in Inmon, supra, to show that the defendants acted intentionally or recklessly, so as to establish a cause of action for the tort of outrage.[4]
Accordingly, the summary judgment entered by the trial court in favor of the defendants on the outrage claim is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
BEATTY, J., dissents.
[1] "Brain death" is defined in Black's Law Dictionary 170 (5th ed. 1979):
 "Numerous states have enacted statutory definitions of death which include brain-related criteria. 'A person shall be pronounced dead if it is determined by a physician that the person has suffered a total and irreversible cessation of brain function. There shall be independent confirmation of the death by another physician.' Calif. Health Safety Code, Section 7180 (1976).
 "Characteristics of brain death consist of (1) unreceptivity and unresponsiveness to externally applied stimuli and internal needs; (2) no spontaneous movements or breathing; (3) no reflex activity; and (4) a flat electroencephalograph reading after [a] 24 hour period of observation. Com. v. Golston [373 Mass. 249], Mass., 366 N.E.2d 744. An increasing number of states have adopted this so-called 'Harvard' definition of brain death, either by statute or court decision."
Compare, Code 1975, § 22-31-1 et seq., treated later in this opinion.
[2] The complaint was amended on March 18, 1983, to add as defendants the University of Alabama Hospitals and Clinics, the University of Alabama Medical Center, and the Executive Committee of the University of Alabama Medical Center. A motion to dismiss these defendants was subsequently granted by the trial court on the basis of sovereign immunity. Constitution of Alabama 1901, Article I, § 14.
[3] The determination of death, moreover, met the specific guidelines adopted by the University of Alabama Hospital Executive Committee, which reference the American Medical Association model bill regarding determination of death. This document was attached to the defendants' motion for summary judgment after being identified by Dr. Morawetz in his answer to interrogatories.
[4] Because of our disposition of the ultimate issue addressed above, a discussion of whether Gallups's claim for outrage is barred by the statute of limitations is pretermitted. See Archie v. Enterprise Hosp. NursingHome, 508 So.2d 693 (Ala. 1987).