Joel Thomas appeals from a summary judgment in favor of the defendants BSE Industrial Contractors, Inc., D L Engineers, Inc., and Frank Koncewicz, on his claim alleging the tort of outrageous conduct ("outrage"). The issue is whether Thomas presented substantial evidence in support of his claim that the defendants committed the tort of outrage by failing to warn him of the presence of asbestos-filled insulation in his work area. Thomas was an employee of BSE.
In 1990, USX Corporation decided to to install approximately 288 infrared heaters in its sheet mill facility in Fairfield, Alabama. Frank Koncewicz, the project engineer for USX, hired F.J. Evans Company and D L Engineers to develop plans for the heater project. The Evans Company provided information concerning the best type of heater for the project and how the heaters should be positioned for optimum performance. D L provided an instructive drawing showing how the heaters should be installed — the drawing illustrated that the heaters should be hung by chains from existing pipes or portions of the building structure in the sheet mill facility.
USX then prepared a "bid package" for the project and sent it to several contractors; the bid package included the D L drawing and the general specifications for the project. The materials in the bid package specifically warned the contractors that asbestos was present in the area where the heaters were to be hung.
After the bidding process was completed, USX awarded the job to BSE. At a "kick-off" meeting between Koncewicz and Phillip Contorno, BSE's supervisor for the project, Koncewicz told Contorno that BSE was not to disturb any insulation on the pipes because some of it contained asbestos. Koncewicz also told Contorno that if BSE did disturb any insulation during the project, it should notify Koncewicz, who would then have the insulation removed by a qualified asbestos abatement contractor.
Contorno testified in his deposition that Koncewicz told him that the BSE employees could hang heaters from pipes where the insulation was in good condition, but not where the insulation was "raggedy." Contorno testified that just as work on the project was getting underway he imparted this information to two BSE supervisors and four BSE laborers who were responsible for hanging the heaters. Thomas had not yet begun to work on the heater project, and he therefore was not privy to this information. Koncewicz, however, denied that he had told Contorno that BSE could hang heaters from pipes that were covered by insulation that was in good condition.
Thomas worked on the heater project for several weeks during November and December 1990. He testified that his crew hung many heaters by chains from pipes that were covered by insulation. He testified that most of this insulation was in very poor condition and that dust and debris would fall on him as he secured the chain around the pipe. He also testified that an overhead crane used on the job caused the insulated pipes to vibrate, thereby releasing more dust in his vicinity as he worked on the heaters. Although fairly early in the job a USX supervisor or employee did tell Thomas not to knock any insulation *Page 1043 
off the pipe, Thomas stated that this USX representative did not inform him that the insulation contained asbestos. Thomas testified that he was not apprised of the fact that the insulation covering the pipes in the sheet mill contained asbestos until the job was nearly completed. Because of this, Thomas did not wear any protective respiratory devices or protective clothing while working on the heater project.
After discovering that the insulation in the work area contained substantial amounts of asbestos,[1] Thomas brought an action in the United States District Court for the Northern District of Alabama against USX based on its failure to warn him of the asbestos, on theories of outrage, negligence, gross negligence, and wantonness ("Thomas I"). Judge Sam C. Pointer entered a summary judgment in favor of USX on Thomas's negligence and wantonness claims, holding that these claims had not accrued, because of Thomas's lack of a demonstrable clinical injury from the asbestos exposure. Judge Pointer also entered a summary judgment on the outrage claim, holding that USX's conduct was not "extreme and outrageous" under the test enunciated by this Court in American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1981). Judge Pointer stated that because the evidence showed that USX had, in the documents contained in the bid package, notified BSE of the presence of the asbestos and that Koncewicz had informed Contorno orally of the presence of the asbestos, there was no substantial evidence that USX's conduct was "atrocious and utterly intolerable" and therefore no jury question on the outrage claim. Thomas appealed Judge Pointer's decision to the Eleventh Circuit Court of Appeals.
After Judge Pointer entered a summary judgment for USX, Thomas brought this action against Koncewicz, BSE, and D L Engineering in the Jefferson County Circuit Court ("ThomasII"). Soon thereafter, Thomas's counsel filed in the same court a complaint against USX, D L, and BSE on behalf of John Moncrief, Thomas's coworker, for injuries allegedly incurred by the exposure to asbestos during the heater project; this action was later removed to the District Court for the Northern District of Alabama. After removal, Judge Seybourne Lynne dismissed BSE from the Moncrief action; he also entered a summary judgment in favor of USX and D L, holding that the conduct of these parties could not be characterized as "extreme or outrageous." Following Judge Lynne's ruling, the Jefferson County Circuit Court entered a summary judgment as to all the defendants in Thomas II. Soon after the circuit court ruled inThomas II, the Eleventh Circuit Court of Appeals affirmed, percuriam and without opinion, Judge Pointer's decision in ThomasI.
The applicable standard for this Court's review of a summary judgment is the substantial evidence rule. Under this rule, once the movant has shown, prima facie, that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law, the nomnovant must introduce substantial evidence to rebut this showing. A.R.Civ.P. 56; Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
This Court first recognized the tort of outrage, or intentional infliction of emotional distress, in American RoadService Co. v. Inmon, 394 So.2d 361 (Ala. 1981). In Inmon, the Court held that to present a jury question the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. The Court defined the second element of the tort of outrage as follows: "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as *Page 1044 
atrocious and utterly intolerable in a civilized society."Inmon, 394 So.2d at 365 (quoting Restatement (Second) of Torts, § 46 cmt. d, at 72 (1948)).
Thomas alleges that the defendants intentionally exposed him to unacceptable levels of risk by requiring him to work near deteriorated insulation that they knew contained asbestos, without warning him of the presence of the asbestos. Thomas presents as support for these allegations an internal memo concerning the heater project prepared by Koncewicz; in this document, Koncewicz stated that the steam piping in the sheet mill facility was badly deteriorated and that repair would be costly because the piping was covered by insulation containing asbestos. Thomas also seeks to buttress these allegations by showing that USX violated several OSHA regulations pertaining to asbestos and that USX violated its own asbestos policy. Moreover, Thomas argues that Tom Alley and Bob Pardue — the D L employees who drafted the sample drawing — also knew that the pipes in the sheet mill were covered by asbestos-laden insulation, but nevertheless recommended that the heaters be hung exclusively from these pipes. Thomas argues that, given the vast amount of medical evidence now available concerning the deleterious effects of asbestos, the actions of the defendants constitute "extreme and outrageous" conduct.
This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was presented. See, e.g., Mohacsy v. HolidayInns, Inc., 603 So.2d 956 (Ala. 1992); Moore v. SpillerAssociated Furniture, Inc., 598 So.2d 835 (Ala. 1992);Bloodsworth v. Morgan, 593 So.2d 55 (Ala. 1991); Butler v. AetnaFinance Co., 587 So.2d 308 (Ala. 1991); Baker v. State FarmGeneral Ins. Co., 585 So.2d 804 (Ala. 1991); Anderton v. Gentry,577 So.2d 1261 (Ala. 1991); Farley v. CNA Ins. Co.,576 So.2d 158 (Ala. 1991); Goodwin v. Barry Miller Chevrolet, Inc.,543 So.2d 1171 (Ala. 1989); Nail v. Jefferson County TruckGrowers Ass'n, Inc., 542 So.2d 1208 (Ala. 1988); Lumpkin v.Cofield, 536 So.2d 62 (Ala. 1988); Gallups v. Cotter,534 So.2d 585 (Ala. 1988); Williams v. Marcum, 519 So.2d 473 (Ala. 1987);Handley v. Richards, 518 So.2d 682 (Ala. 1987); Crowder v.Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987); Jackson v.Colonial Baking Co., 507 So.2d 1310 (Ala. 1987); Therrell v.Fonde, 495 So.2d 1046 (Ala. 1986); McIsaac v. WZEW-FM Corp.,495 So.2d 649 (Ala. 1986); Surrency v. Harbison, 489 So.2d 1097
(Ala. 1986); Logan v. Sears, Roebuck Co., 466 So.2d 121
(Ala. 1985). In fact, in the 12 years since Inmon was decided, all cases in which this Court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials, see Whitt v. Hulsey, 519 So.2d 901 (Ala. 1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), Levite Undertakers Co. v. Griggs, 495 So.2d 63
(Ala. 1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and Cates v. Taylor, 428 So.2d 637 (Ala. 1983) (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim, National SecurityFire Cas. Co. v. Bowen, 447 So.2d 133 (Ala. 1983); and 3) a case involving egregious sexual harassment, Busby v. TruswalSystems Corp., 551 So.2d 322 (Ala. 1989).
Given the limited nature of this cause of action, as indicated by the above-cited cases, we hold that the conduct of the defendants Koncewicz and D L Engineering cannot be characterized as "atrocious and utterly intolerable in a civilized society." Inmon, 394 So.2d at 365. Although USX may well have failed to comply with certain OSHA regulations and regulations of its own concerning asbestos, there is in the record evidence that Koncewicz did personally warn Contorno of the presence of asbestos in Thomas's work area. Furthermore, the record *Page 1045 
reveals that Koncewicz provided BSE with documents that specifically warned of asbestos in the work area. In light of this evidence, Koncewicz's conduct clearly is not sufficiently reprehensible to support a claim of outrage.
Nor does the conduct of D L Engineering rise to such a level. The drawing submitted by D L does appear to portray one of the heaters hanging from an existing pipe in the sheet mill, and we shall assume for purposes of discussion that Koncewicz and BSE did in fact rely exclusively on the drawing in instructing the BSE employees as to where to hang the heaters. However, a notation on the drawing states that the heaters are to be hung by a chain "around existing pipe orstructure." Therefore, the D L drawing does not recommend that the heaters be hung exclusively from pipes. D L also points out that the notation refers only to pipes generally, and that only the steam pipes in the sheet mill were covered with asbestos-laden insulation. It argues that other types of pipe in the sheet mill, namely water and air pipes, could have been used hang the heaters, and its drawing did not preclude either USX or the BSE supervisors from instructing the BSE workers to hang the heaters from the water or air pipes. This contention is persuasive, and we therefore hold that D L's recommendation in its drawing to hang heaters from "existing pipe or structure" cannot be characterized as extreme and outrageous conduct.
The question of "extreme and outrageous conduct" is closer with respect to BSE. Koncewicz denies Contorno's assertion that Koncewicz told him that BSE could hang the heaters from any pipe whose insulation was not "raggedy." Moreover, Thomas was not in the original group of BSE employees and supervisors that Contorno advised in this regard; Thomas began working on the heater-hanging crew at a later time, and he testified that he was never told anything about asbestos by the BSE supervisors. This failure to warn is exacerbated by the fact that BSE, as an independent contractor on the heater project, was contractually and legally responsible for the safety of its employees and by the fact that the record reveals that BSE was warned of the presence of asbestos in the work area.
However, the judgment in favor of BSE is correct, because Thomas presented no substantial evidence that he had suffered emotional distress so severe that a reasonable person could not be expected to endure it. Thomas alleged in his complaint that he is afraid that he will contract cancer because of his exposure to asbestos, and he testified that he feels like a "walking time bomb." These generalized apprehensions do not rise to the level of the extreme, severe emotional distress for which an action will lie, at least because his apprehensions are not supported by any clinical indications that he has been injured by his exposure. When asked about the general emotional distress occasioned by the exposure, Thomas replied:
 "Emotional? As far as emotional, I really, since then, hadn't thought — ever thought much about it. Because I know, from what Chester had told me, something like this may not show up for twenty years. I'm just real ticked off that that would happen, knowing that, you know, any human being working in an area knowing what's going to happen to them, would neglect doing that and let that happen. But it happened to me."
When, later in his deposition, he was asked specifically about his fear of cancer, Thomas responded:
 "Well, right now, it's on my mind real heavily. But once I get in-depth and find out exactly what kind of asbestos and what particular material it took, then I will get caught up on that real quick now. I don't know what's going to happen at a later date. I may go find out if I actually do have any — I don't know anything about the medical part."
This testimony does not indicate the severe emotional distress this Court has hitherto required before holding that an outrage claim may be presented to the jury. Cf. Cates v. Taylor,428 So.2d 637 (Ala. 1983). Thomas argues, however, that this traditional yardstick for measuring emotional distress is inapplicable here because he is aware that any asbestos-related disease will probably *Page 1046 
remain dormant for a long time; he cites the Fifth Circuit Court of Appeals' decision in Jackson v. Johns-Manville SalesCorp., 781 F.2d 394 (5th Cir. 1986), cert. denied,478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), as support for the proposition that "cancer-phobia" can constitute emotional distress in asbestos cases, even in the absence of present emotional problems.
This Court has no quarrel with the proposition that the fear of cancer may constitute legally cognizable emotional distress in an appropriate case. However, Jackson is inapposite to this situation, because the Jackson plaintiff already had a physical disease — asbestosis — and he presented overwhelming evidence, in the form of expert medical testimony, that he was in fact likely to contract cancer from his exposure to asbestos. The court held that under the circumstances, Jackson's fear was fully justified and constituted a compensable injury even though he had not specifically voiced his fear. The court expressly declined to decide whether the fear of cancer could constitute a compensable injury where the plaintiff is unable to demonstrate that he is likely to contract cancer.
Thomas has not shown that he is likely to contract cancer from his exposure to asbestos. His medical expert, Dr. Michael Conner, testified that Thomas has probably suffered cellular damage from asbestos exposure. However, Dr. Conner's opinion was based entirely on a history given to him by Thomas, and Dr. Conner also stated that Thomas has exhibited no clinically verifiable injury. Although Dr. Conner did state that Thomas "runs a significant risk for the development of future asbestos-related diseases," he was unable to state with any reasonable specificity the probability that Thomas would develop an asbestos-related disease in the future. Therefore, we hold that Thomas's generalized fear of cancer, unsupported by any clinical evidence, does not rise to the level of "severe emotional distress" necessary to present a jury question on the tort of outrage.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Thomas removed a piece of the insulation from the sheet mill facility and had it analyzed at the laboratories of ERG Engineering, Inc. The ERG report reveals that the insulation contained substantial amounts of asbestos.