WISE, Justice.
Hector Laurel, M.D. (“Dr. Laurel”), Crissey[1] Watkins, and Comprehensive Anesthesia Services, P.C. (“CAS”) (hereinafter collectively referred to as “the defendants”), sought a permissive appeal pursuant to Rule 5, Ala. R.App. P., from the Madison Circuit Court’s order denying their motions for a summary judgment. We granted permission to appeal; we now reverse the trial court’s order.

Facts and Procedural History

On August 17, 2009, the plaintiff, Tiffany Sisk Prince,[2] underwent a laparoscopic cholecystectomy at The Madison Surgery Center. During the anesthetic induction of Prince, Watkins administered what she believed to be 4 milligrams of Zofran[3] from a syringe that had a white label, handwritten on which was the letter “Z.” Watkins testified that that medication had been drawn into the syringe by Dr. Laurel, an anesthesiologist. After the medication was administered, and while Prince was moving from the preoperative stretcher to the operating-room stretcher, Prince became weak and was having trouble breathing. Watkins called for an anesthesiologist and assisted Prince with a bag mask. Subsequently, Dr. Hoger,[4] another anesthesiologist, came in and administered anesthesia medication to Prince.
*97 Watkins testified that Dr. Laurel came into the room sometime during the induction of Prince. When talking to Dr. Laurel, Watkins learned that the syringe with the white label actually contained Zemu-ron, a paralytic, and that the syringe had been used on a previous patient (“Patient A”). Watkins testified that, during Patient A’s induction, she had disposed of a syringe of Zemuron because she had touched the cap. Subsequently, she said, Dr. Laurel had drawn another syringe of Zemuron for Patient A. According to Watkins, Dr. Laurel then put the Zemuron in Patient As top IV port, which was near the IV bag. Watkins testified that needles cannot be used in IV ports; that the syringes are screwed into the port; and that the medicine is then pushed into the IV port. Watkins also testified that, as Dr. Laurel was leaving Patient A’s room, he told her that Patient A needed Zofran and that it was on top of the cart. Watkins testified that she administered Zofran to Patient A and that she disposed of the syringe.
Watkins testified that she believed at the time that the syringe she used on Prince contained Zofran because it contained 2 ccs of medication and because it had a white label with a “Z” handwritten on it. She testified that white labels were typically used for Zofran and that Zemu-ron was normally labeled with a red label because it is a paralytic.
Watkins testified that she subsequently checked Patient As medical records and that Patient A’s medical history was negative for a history of HIV and hepatitis C. During the year following her surgery, Prince underwent routine testing for HIV and hepatitis C, and all of Prince’s tests were negative. Prince did not pay for any of the testing.
On August 16, 2011, Prince sued Dr. Laurel, Watkins, and CAS, alleging medical malpractice.[5] The defendants filed motions for a summary judgment, and Prince filed her response to the motions. On August 15, 2013, after conducting a hearing, the trial court entered orders denying the defendants’ motions for a summary judgment. Watkins subsequently filed a “Motion to Reconsider or, Aternatively, Motion for Certification of Order for Appeal,” which CAS later joined. Dr. Laurel also filed a motion to reconsider. The trial court entered orders denying the motions to reconsider. On August 23, 2013, it provided the certification necessary for an interlocutory appeal pursuant to Rule 5, Aa. R.App. P. The defendants then filed a petition for a permissive appeal in this Court, and this Court granted the petition.

Standard of Review

“ ‘ “This Court’s review of a summary judgment [or the denial of a summary-judgment motion] is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Aa. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the mov-ant is entitled to a judgment as a matter of law. Rule 56(c), Aa. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Aa.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Aa.1986). Once the movant makes a prima facie show *98 ing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).” ’
“Prince v. Poole, 935 So.2d 431, 442 (Ala.2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004)).”
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala.2009).
“ ‘In order to overcome a defendant’s properly supported summary-judgment motion, the plaintiff bears the burden of presenting substantial evidence as to each disputed element of [its] claim.’ Ex parte Harold L. Martin Distrib. Co., 769 So.2d 313, 314 (Ala.2000).”
White Sands Grp., L.L.C. v. PRS II, LLC, 32 So.3d 5, 11 (Ala.2009).

Discussion

The trial court’s certification for permissive appeal included the following controlling question of law:
“Whether Alabama law permits recovery for fear of an injury that has not occurred, and where the expert testimony is undisputed that there is no medical basis to conclude that the Plaintiff has any risk of incurring such injury in the future.”
Prince asserted medical-malpractice claims against the defendants.
“ ‘In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.’
“ § 6-5-548(a) [, Ala.Code 1975].... In addition, to prove causation with respect to any of their claims, the plaintiffs must prove by substantial evidence that the acts or omissions of [of the health-care provider] ‘probably caused’ their injuries. Shanes v. Kiser, 729 So.2d 319 (Ala.1999); McAfee v. Baptist Med. Ctr., 641 So.2d 265 (Ala.1994).”
Houston Cnty. Health Care Auth. v. Williams, 961 So.2d 795, 810 (Ala.2006).
In her complaint, Prince alleged that “she has suffered extreme mental anguish, humiliation, embarrassment, and other injuries in that she was advised that she needed to have screening for HIV, hepatitis C or other infectious diseases, not only in the past, but for the future. Further, she was exposed to unknown pathogens as a consequence of the used syringe, and the needle attached thereto, and medication that remained in the syringe.”
She also alleged that “the mental and emotional anguish associated with the screening even today for the pathogens associated, or could be associated with the administration impropriety of the medication continues today and will continue into the future.”
In her motion to reconsider, Watkins asserted:
“As readily conceded by [Prince’s] counsel in response to the Court’s questions *99 in oral argument, [Prince’s] only claim for damages in this case is that of alleged fear and mental anxiety that she might one day acquire some type of viral infection as a proximate result of the administration of anesthetic medicine in question. Her sole claim is that she ‘worries every day that something could happen ... that [she] could end up with a virus.’ (Prince Dep. pp. 43-44) (Emphasis supplied.)”
In support of their summary-judgment motions, Dr. Laurel and CAS attached Dr. Laurel’s affidavit. In his affidavit, Dr. Laurel stated:
“There is no medical basis to conclude that Mrs. Prince has any risk to develop an illness or infection, including hepatitis or HIV, as the result of the event forming the basis of this litigation.”
Prince did not present any evidence to establish that she had any risk of developing HIV, hepatitis C, or any other illness or infection as a result of the reuse of the previously used syringe and medication on her. Rather, in her brief to this Court, she focuses solely on the fact that she was advised of the need for future testing for HIV and hepatitis C.[6]
“[I]n a variety of tort cases, this Court has held that mere fear of a future injury or disease, without more, does not constitute a compensable mental or emotional injury. See Houston Health Care Auth. v. Williams, 961 So.2d 795, 810-12 (Ala.2006) (holding, in a case arising under the [Alabama Medical Liability Act], that alleged emotional distress consisting ‘simply of fear of possible future infection from known exposure to fungus in a contaminated breast implant, without more, did not constitute a compensa-ble legal injury); Southern Bakeries, Inc. v. Knipp, 852 So.2d 712, 717-18 (Ala.2002) (holding, in an action alleging fraud and failure to warn of the presence of asbestos, that mere fear that exposure to asbestos could lead to asbestos-related disease, without more, did not constitute a compensable injury; this Court noted that the plaintiff *ha[d] not sought any medical care for his alleged emotional distress and he did not plan to have any psychiatric or psychological treatment or any counseling for emotional distress or mental anguish’); and Pfizer, Inc. v. Farsian, 682 So.2d 405, 407 (Ala.1996) (holding, in a product-liability/personal-injury action against a heart-valve manufacturer, that the plaintiffs alleged emotional distress consisting merely of the fear that his artificial heart valve, which was working properly, could one day malfunction, ‘is not, without more, a legal injury sufficient to support [the plaintiffs] claim’). ‘It is a basic principle of tort law that in negligence cases, the plaintiff must suffer actual injury; mere threat of future harm, not yet realized, is not enough.’ Southern Bakeries, 852 So.2d at 716 n. 7 (citing W. Page Keeton et al., The Law of Torts § 30 at 165 (5th ed.1984)).”
Crutcher v. Williams, 12 So.3d 631, 650 (Ala.2008).
In Grantham v. Vanderzyl, 802 So.2d 1077 (Ala.2001), the plaintiff, Tammy Grantham, an operating-room nurse, assisted the defendant, Dr. Keith Vanderzyl, during an orthopedic surgical procedure. During the surgery, a foot pedal used to *100 operate one of the surgical instruments was not working properly. Grantham asserted that, when she stooped to adjust the pedal, Dr. Vanderzyl took a surgical drape containing the patient’s blood and surgical refuse and threw it at her. Dr. Vanderzyl claimed that the incident was an accident. Grantham filed a complaint against Dr. Vanderzyl in which she alleged assault and battery, the tort of outrage, and negligence or wantonness. The trial court entered a partial summary judgment in favor of Dr. Vanderzyl on the tort-of-outrage claim. In addressing Grantham’s allegations that Dr. Vanderzyl’s conduct was actionable in a tort-of-outrage claim, this Court stated:
“In order to present a cognizable claim under the narrowly construed tort of outrage, a plaintiff must prove that the defendant’s conduct 1) was intentional or reckless; 2) was extreme and outrageous; and 3) caused emotional distress so severe that no reasonable person could be expected to endure it. See Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1043 (Ala.1993).
“Generalized apprehensions and fears do not rise to the level of the extreme, severe emotional distress required to support a claim alleging the tort of outrage. See Thomas, 624 So.2d at 1045....
“Grantham asserts that she suffered a threat to her life; that that threat caused her extreme emotional distress; and that that distress merits relief under a tort-of-outrage claim. However, there must be some basis in fact for her fear of developing a disease from exposure to the patient’s blood. The mere fear of contracting a disease, without actual exposure to it, cannot be sufficient to cause the level of emotional distress necessary for this cause of action. In actuality, Grantham was never in danger of contracting a communicable disease as the result of the operating-room incident. Every blood test to which Grantham has submitted has returned a negative result. There is no evidence that the patient carried a communicable disease. Grantham even admits in her deposition testimony that she has no reason to believe she presently has any disease contracted as a result of her exposure to the patient’s blood. The trial court correctly held that Grant-ham’s allegations, even if true, do not state conduct rising to the level required to constitute the tort of outrage under Alabama law.”
802 So.2d at 1081.
Similarly, in this medical-malpractice case, there is no evidence indicating that Patient A had a communicable disease. In fact, the medical records indicate that Prince was advised of Patient A’s negative test results. Additionally, the undisputed expert testimony established that there is no medical basis for concluding that Prince has a risk of developing any disease based on the use of the contaminated syringe. Finally, as was the case in Grantham, all of Prince’s test results have been negative.
“While fear is a real phenomenon and can be debilitating, based on the evidence presented in this case we conclude that [Prince has] not suffered any legally cognizable present injury. Opening the courts generally for compensation for fear of future disease would be a dramatic change in the law and could engender significant unforeseen and unforeseeable consequences; awarding such compensation is better left to the Legislature.”
Southern Bakeries, Inc. v. Knipp, 852 So.2d 712, 718 (Ala.2002) (footnote omitted). Alabama law, as set forth in Crutch-er, Southern Bakeries, and Grantham, does not permit Prince to recover for fear *101 of a future injury where she has not suffered any physical injury and where the undisputed expert medical testimony has established that there is no medical basis for concluding that she has a risk of developing any disease in the future. Therefore, the trial court should have granted the defendants’ motions for a summary judgment on that basis. Accordingly, we reverse the trial court’s order denying the defendants’ summary-judgment motions and remand the cause for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, PARKER, and SHAW, JJ., concur.

. In the complaint and other parts of the record,' Watkins’s first name is also spelled “Chrissy.” However, in her answer and affidavit, Watkins spelled her first name as "Cris-sey.” We use that spelling.

. At the time of the surgery, Prince’s last name was Sisk.

. Watkins testified that Zofran is administered as a preemptive measure to prevent postoperative nausea and vomiting.

. The record does not indicate Dr. Hoger’s first name.

. The complaint also named Madison Surgery Center and Dr. Peter A. Vevon as defendants. However, Dr. Vevon and Madison Surgery Center subsequently filed motions for a summary judgment, which the trial court granted.

. In her brief, Prince also asserts that she was "advised of the risks associated with the anesthesia error.” However, the record does not indicate that Prince presented any evidence indicating that she was actually advised of any risks associated with the use of the contaminated syringe. Rather, Dr. Laurel’s notes indicate that Prince and her family were advised of the need for testing for HIV and hepatitis C to be performed on both Prince and Patient A.