30 F.3d 976
 63 USLW 2148, 128 Lab.Cas. P 33,115,
2 Wage & Hour Cas.2d (BNA) 294
 Gregory J. McMASTER; Elizabeth Krogstad; Harold Gustafson;
Michael Giest; Guy James Hathaway; John E. Liljedahl;
Timothy S. Smith; Shawn Hubbard; James Scott; Ricky J.
Sistad; Gerald Norris, on behalf of themselves and all
other persons similarly situated, Plaintiffs-Appellants,
v.
STATE OF MINNESOTA; Orville Pung, Minnesota Commissioner of
Corrections; Jean Whitney, Administrative Assistant to the
Commissioner of Corrections; Donald G. Tomsche,
Correctional Administrator to Minnesota Department of
Corrections; Dennis Benson, Warden, Minnesota Correctional
Facility--Oak Park Heights; Pat Adair, Superintendent,
Minnesota Correctional Facility-Shakopee; Robert A.
Erickson, Warden, Minnesota Correctional
Facility--Stillwater; Fred Holbeck, Superintendent,
Minnesota Correctional Facility--Faribault; G. Fred
Lafleur, Superintendent, Minnesota Correctional
Facility--Lino Lakes; Leroy Siegal, Superintendent,
Minnesota Correctional Facility--St. Cloud; Thomas F.
Grogan, Director, Minnesota Correctional Facility--Oak Park
Heights Industries; Frank W. Wood, Minnesota Deputy
Commissioner of Corrections; Guy Piras, Assistant Director,
Minnesota C.F.--OPH Industries; Jim Rariek, Supervisor,
Complex 4, MCF--OPH Industries; John Doe; Mary Roe,
Defendants-Appellees.
 No. 93-2502.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 9, 1994.
Decided July 25, 1994.
 
 Richard G. Nadler, St. Paul, MN (argued), for plaintiffs-appellants.
 Joycelyn F. Olson, Asst. Atty. Gen., St. Paul, MN (argued), for defendants-appellees.
 Before ARNOLD, Chief Judge, LIVELY*, Senior Circuit Judge, and FAGG, Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 The question in this case is whether inmates of state correctional facilities are entitled to be paid the federal minimum wage established under the Fair Labor Standards Act for work performed inside those facilities as part of a prison industries program. The district court held that the inmate-plaintiffs are not covered by the Fair Labor Standards Act and have no right of action under the Ashurst-Sumners Act, and dismissed their complaint.
 
 I.
 A.
 
 2
 Minnesota law authorizes the Commissioner of the Minnesota Department of Corrections (DOC) to establish and operate industrial and commercial activities at any state correctional facility. The activities carried out under this authorization vary in nature, ranging from the manufacture of auto parts, file folders and clothing to data entry and telemarketing services. The commissioner is also authorized to set the level of compensation to be paid to inmates, the amount "to depend upon the quality and character of the work performed as determined by the commissioner of corrections and the chief executive officer." Minn.Stat. Sec. 243.23(1) (1993). The authorizing statute explains the State's primary purpose in establishing these activities:
 
 
 3
 The industrial and commercial activities authorized by this section shall be for the primary purpose of providing vocational training, meaningful employment and the teaching of proper work habits to the inmates of correctional facilities under the control of the commissioner of corrections, and not as competitive business ventures.
 
 
 4
 Minn.Stat. Sec. 241.27(1) (1993).
 
 B.
 
 5
 The plaintiffs are current and former inmates of various Minnesota correctional facilities who have worked, or been assigned to work, in prison industries. The plaintiffs brought this class action claiming that the State violates the Fair Labor Standards Act (FLSA), 29 U.S.C. Secs. 201-219, and the Ashurst-Sumners Act, 18 U.S.C. Secs. 1761-1762 by paying inmates less than the minimum wage for all "employees" prescribed by the FLSA and by shipping prisoner-made goods in interstate commerce, which is prohibited by Ashurst-Sumners. The complaint alleges that the plaintiffs and class members are paid 50 to 75 cents per hour. The current minimum wage is $4.25 per hour.
 
 
 6
 In pursuing their Ashurst-Sumners claim, the plaintiffs relied on the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, contending that Ashurst-Sumners created a protected right in a property or liberty interest that the State infringed by paying them less than the minimum wage.
 
 C.
 
 7
 The district court dismissed the action and filed a well-reasoned opinion dealing with the issues raised on appeal as well as others not brought here for review. See McMaster v. Minnesota, 819 F.Supp. 1429 (D.Minn.1993). Because we agree with both the holding and the reasoning of the district court, we affirm.
 
 II.
 
 8
 The Supreme Court has never addressed the issue of whether inmates are to be included within the coverage of the FLSA. However, most federal courts of appeals that have dealt with the issue have found that inmates working in state-operated industries are not "employees" of the state and are therefore not entitled to FLSA protection. Franks v. Oklahoma State Indus., 7 F.3d 971 (10th Cir.1993); Hale v. Arizona, 993 F.2d 1387 (9th Cir.) (en banc) ("Because prisoners ... worked for programs structured by the prison pursuant to the state's requirement that prisoners work at hard labor, the economic reality is that their labor belonged to the institution. We hold, therefore, that they were not 'employees' of the prison entitled to be paid minimum wage under the FLSA."), cert. denied, --- U.S. ----, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993); Harker v. State Use Indus., 990 F.2d 131 (4th Cir.) ("[W]e see no indication that Congress provided FLSA coverage for inmates engaged in prison labor programs like the one in this case."), cert. denied, --- U.S. ----, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993); Vanskike v. Peters, 974 F.2d 806 (7th Cir.1992) ("[T]he relationship between the [Department of Corrections] and a prisoner is far different from a traditional employee-employer relationship...."), cert. denied, --- U.S. ----, 113 S.Ct. 1303, 122 L.Ed.2d 692 (1993); Miller v. Dukakis, 961 F.2d 7 (1st Cir.) ("The courts have uniformly denied FLSA coverage ... to convicts who work for the prisons in which they are inmates."), cert. denied, --- U.S. ----, 113 S.Ct. 666, 121 L.Ed.2d 590 (1992); Alexander v. Sara, Inc., 721 F.2d 149 (5th Cir.1983) (affirming district court finding that "extension [of the FLSA] to the prison inmate was not legislatively contemplated"); Emory v. U.S., 2 Cl.Ct. 579 ("Prisoners are not employees, within the meaning of the Fair Labor Standards Act."), aff'd, 727 F.2d 1119 (Fed.Cir.1983).
 
 
 9
 This court addressed the issue of prisoner coverage under the FLSA in Wentworth v. Solem, 548 F.2d 773 (8th Cir.1977). The court found that an inmate working in a South Dakota prison bookbindery was not covered under the FLSA. This conclusion, however, relied at least in part on the Supreme Court's decision in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), stating that the National League of Cities decision would prohibit extension of the federal law where such extension would interfere with a traditional government function. As the plaintiffs in this case correctly argue, Wentworth is not dispositive of the issue because the Supreme Court overruled National League of Cities in Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Nonetheless, Wentworth still provides some guidance in this case because the Wentworth court did not rely solely on National League of Cities in reaching its conclusion concerning the FLSA. In fact, prior to any mention of National League of Cities, the court stated that "[w]e are doubtful that Congress ... intended to extend the coverage of the minimum wage law to convicts working in state prison industries." 548 F.2d at 775.
 
 III.
 A.
 
 10
 The plaintiffs contend that the term "employees" as used in the FLSA must be given a broad and expansive reading. The inmates work at the direction of the prison officials just as employees on the outside work at the direction of their employers. The relationship is the same, they say, and the circumstance that the inmates do not have a consensual agreement with the DOC is irrelevant. They bolster this argument by pointing out that the FLSA contains a list of exemptions from its minimum wage requirements, and that prison inmates and their labor are not included on that list.
 
 
 11
 The plaintiffs rely heavily on cases from two other circuits in support of their argument that prisoners do fall within the boundaries of the FLSA. In Watson v. Graves, 909 F.2d 1549 (5th Cir.1990), the court of appeals reversed a district court decision and found that inmates who worked for a construction business were employees under the FLSA. Watson is readily distinguishable. First, the inmates did not work in the jail where they were incarcerated. Rather, a private contractor picked them up and took them to its construction sites. Second, while there, the inmates were unguarded and totally under the control of the contractor. Third, the inmates who worked on these details were not assigned to do so as part of their sentences; they volunteered to do this work when it was available. Fourth, the inmates were paid directly by the contractor, not by their custodians. Under all these circumstances the court found that the inmates were "employees" of the contractor. Watson provides no support for the plaintiffs in this case, who worked in the prisons as part of their sentences, were paid by the DOC for their labor, and seek a holding that they are employees of the DOC, not of some private business.
 
 
 12
 In Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir.1984), a New York inmate sued the college for whom he conducted tutorial sessions at the prison. Carter was chosen by the college, although the prison did have to give permission for Carter to do the work. Carter stated that he was paid directly by the college for his services and argued that he should receive the same pay given to the college's non-inmate tutors, i.e. the federal minimum wage. The college argued that because Carter was a prisoner, he was not covered by the FLSA, and the district court agreed, finding that although Carter conducted tutoring sessions for the defendant college, the prison still retained complete control over Carter.
 
 
 13
 The court of appeals reversed the district court, finding that prisoners could not be categorically excluded from FLSA coverage. The court did not find, however, that the plaintiff should prevail on his FLSA claim. Rather, the court stated, "the fact that [Carter] is a prison inmate does not foreclose his being considered an employee for purposes of the minimum wage provisions of the FLSA," and remanded to the district court for further examination of the particular facts of the case. Id. at 15. The court noted that the Carter case was "quite different from the typical case in which prisoners seek FLSA coverage," id., and merely declined to hold categorically that a prison inmate is never covered by the FLSA.
 
 
 14
 Carter is also easily distinguished. Carter did not seek back wages from the prison authorities; he sought recovery from the community college. Furthermore, Carter was not required to work as part of his sentence; he volunteered to do tutoring, work he was allowed, not required, to do. Under the Minnesota plan, inmates have no choice of whether to work or not, and those who refuse to work are denied good time credit as a penalty. Minn.Stat. Sec. 243.18(2) (1993).
 
 B.
 
 15
 We hold that inmates such as the present plaintiffs, who are required to work as part of their sentences and perform labor within a correctional facility as part of a state-run prison industries program are not "employees" of the state or prison within the meaning of the Fair Labor Standards Act. The economic reality of the relationship between inmates and the DOC dictates that the inmates not be considered employees. The inmates have not volunteered or contracted to work for the State; they are assigned and required to do so. As the district court stated:
 
 
 16
 Plaintiffs have neither contracted with the government to become employees nor engaged in a bargained-for exchange of labor for consideration. Rather, they have been assigned work within the prison industries for the purposes of training, rehabilitation and reduction of idleness. Thus, the relationship between plaintiffs and the state is not an employment relationship, but a custodial relationship in which the FLSA does not apply.
 
 
 17
 819 F.Supp. at 1437.
 
 
 18
 Our conclusion is consistent with the purposes for which the FLSA was enacted. "The central aim of the [FLSA] was to achieve, in those industries within its scope, certain minimum labor standards." Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960). By enacting the FLSA, Congress sought to rectify labor conditions that are "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. Sec. 202(a). Furthermore, the FLSA was also intended to prevent unfair competition resulting from the use of underpaid labor. 29 U.S.C. Sec. 202(a)(3).
 
 
 19
 The primary purpose of the FLSA--providing minimum standards of living for workers--has no application in the prison context. Food, clothing and shelter are provided to the prisoners by the state, regardless of their ability to pay.
 
 
 20
 Requiring the payment of minimum wage for a prisoner's work in prison would not further the policy of ensuring a "minimum standard of living," because a prisoner's minimum standard of living is established by state policy; it is not substantially affected by wages received by the prisoner.
 
 
 21
 Vanskike v. Peters, 974 F.2d at 810.
 
 
 22
 Congress has addressed the second purpose of the FLSA--protecting competition--by enacting the Ashurst-Sumners Act. Ashurst-Sumners prevents the shipment of prisoner-made goods in interstate commerce, thus avoiding the problem of unfair competition based on cheap labor. However, Ashurst-Sumners provides two exceptions to its prohibitions: (1) any goods which are produced for use by federal or state governments; and (2) goods produced as part of a designated pilot project in which inmate workers are paid prevailing wages. Sec. 1761(b)-(c). The government exception was part of the original enactment in 1935; the prevailing wage exception, known as the Justice System Improvement Act, was added in 1979.
 
 
 23
 The very existence of these exceptions indicates that Congress did not intend for inmates to be covered by the FLSA. If Congress intended for prisoners to be covered by the FLSA, then the entire Ashurst-Sumners Act would be unnecessary: if all inmate workers made minimum wage, there would be no need to protect private businesses from unfair competition.IV.
 
 
 24
 With respect to their Ashurst-Sumners claim, the plaintiffs assert that this statute creates a federal right or "especial benefit" for prison inmates. Because 42 U.S.C. Sec. 1983 provides a vehicle for asserting rights created by a federal statute, they argue that the district court erred in dismissing this claim.
 
 
 25
 This court stated in Wentworth v. Solem, 548 F.2d 773, 775 (8th Cir.1977), that Ashurst-Sumners is a criminal statute that "do[es] not expressly create a private right of action," and that no elements are present in the statute which lead to the conclusion that there is an implied right. Although the parties have discussed the factors listed in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a statute includes an implied private right of action, the plaintiffs' reliance on Sec. 1983 requires a different inquiry. See Wilder v. Virginia Hospital Ass'n, 496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 2517 n. 9, 110 L.Ed.2d 455 (1990) (Whether a cause of action is available under Sec. 1983 is a different inquiry than that involved in determining whether a private right of action is implied.).
 
 
 26
 The district court correctly found that the plaintiffs could not enforce Ashurst-Sumners by way of Sec. 1983 because they "failed to demonstrate that the prevailing wage provision was enacted for their especial benefit." 819 F.Supp. at 1441. This conclusion resulted from the proper inquiry.
 
 
 27
 In Wilder, the Supreme Court held that Sec. 1983 provides a cause of action for violations of federal statutes, with two exceptions: (1) where the statute creates no " 'enforceable rights, privileges or immunities within the meaning of Sec. 1983' "; or (2) where " 'Congress has foreclosed such enforcement of the statute in the enactment itself.' " Id. (quoting Wright v. Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). Because there is no indication that Congress intended to foreclose enforcement of the statute, the issue is whether the Ashurst-Sumners Act creates any enforceable federal rights.
 
 
 28
 The determination of the existence of a federal right "turns on whether 'the provision in question was intend[ed] to benefit the putative plaintiff.' " Wilder, 496 U.S. at 509, 110 S.Ct. at 2517 (quoting Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). The plaintiffs allege that the defendants have violated 29 U.S.C. Sec. 1761(a) by knowingly transporting convict-made goods in interstate commerce. Although subsections (b) and (c) of Sec. 1761 set forth exceptions to subsection (a), these exceptions do not provide a basis for determining the underlying purpose of Congress in enacting Ashurst-Sumners. That purpose is found in subsection (a), the general prohibition. The plaintiffs rely upon the legislative history of subsection (c); however, subsection (c) was added by amendment forty years after the original enactment and deals only with an exception to subsection (a)--an exception that is inapplicable to this case. To the extent that consideration of legislative history is helpful, that history and judicial interpretation accompanying the original enactment is most pertinent. Consulting these sources we learn that the Ashurst-Sumners Act was intended to oppose "the evils attending the sale of [convict-made] goods ... in competition with goods manufactured and produced by free labor." S.Rep. No. 906, 74th Cong., 1st Sess. (1935). See also Kentucky Whip and Collar v. I.C.R. Co., 299 U.S. 334, 351, 57 S.Ct. 277, 282, 81 L.Ed. 270 (1937) (This legislation "proceeded upon the view 'that free labor, properly compensated, cannot compete successfully with the enforced and unpaid or underpaid convict labor of the prison' ").
 
 
 29
 We conclude that Congress' purpose in enacting the Ashurst-Sumners Act was to protect private business, not to protect the inmate worker. As this court previously stated: "Sections 1761-62 embody Congressional interest in free labor and were designed to protect private business from competition from goods produced with inexpensive convict labor." Wentworth, 548 F.2d at 775.
 
 
 30
 Ashurst-Sumners does not provide a private cause of action, either expressly or by implication. Furthermore, Ashurst-Sumners creates no federal right enforceable by way of 42 U.S.C. Sec. 1983.
 
 
 31
 The judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE PIERCE LIVELY, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation