Bennie WALKER, Plaintiff,

v.

**CITY OF ELBA, ALABAMA; Water and Electric Board of the City of Elba, Defendants.**

Civ. A. No. 94–D–139–S.

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 30, 1994.

Kenneth Coy Sheets, Jr., Dothan, AL, for plaintiff.

Alex L. Holtsford, Jr., T. Randall Lyons, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

This matter is presently before the court on Defendants' Motion for Summary Judgment, filed July 22, 1994. Defendants filed a contemporaneous brief in support of their motion. On October 17, 1994, Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment. For reasons articulated more fully below, Defendants' Motion for Summary Judgment is due to granted in part and denied in part.

### Jurisdiction and Venue

The court may competently assert subject matter jurisdiction because plaintiff alleges violations of 42 U.S.C. §§ 1981 and 2000e ("Title VII").[1] Plaintiff alleges that Defendants are liable for infliction of emotional distress under Alabama's tort of outrage. This court may adjudicate this state law matter by exercising pendent jurisdiction. See 28 U.S.C. § 1367(a). Jurisdiction over the person of the defendants and venue are uncontested.

### Facts and Contentions

Plaintiff, Bennie Walker (hereinafter "Walker"), is a black male residing in Coffee County, Alabama. Plaintiff was employed by the Water and Electric Board of Elba (hereinafter the "Board") from September 4, 1991, to December 15, 1992. During Walker's entire tenure with the Board, he was a work release inmate from the Alabama Department of Corrections (hereinafter the "ADC"). Plaintiff contends that he was also an employee of the City of Elba (hereinafter "Elba") because Elba directs and controls the Board.

In August, 1992, Ed Compton (hereinafter "Compton"), a permanent hire and Plaintiff's immediate supervisor, suffered a stroke. As a result, Compton was transferred to another position within the Board because Compton's treating physician restricted the range of duties which Compton could discharge. Prior to his stroke, Compton engaged in "buck-

---

1. Pursuant to 28 U.S.C. § 1331, "[t]he districts courts shall have original jurisdiction of all civil actions arising under the .... laws .... of the United States."

et" work.[2] Following his stroke, Compton was advised by his treating physician to no longer perform such work. Allegedly acting on the advice of Compton's physician, the Board transferred Compton to a "ground" position.

The Board contends that in order to transfer Compton to work on the ground, a permanent employee had to be hired to work in the bucket. According to the Board, Plaintiff was ineligible to work in the bucket. The Board claims that as a member of the prison work release program, Plaintiff was only a temporary employee with the Board. The Board asserts that since Compton was being transferred it had no further use for the temporary employee spot filled by Walker. According to the Board, it apprised Walker of these developments in September, 1992, and Walker was allegedly terminated shortly thereafter.

Also, the Board further asserts that it has never hired a work release inmate and assigned him to a "permanent" position until such employee had fully served his prison sentence. Because Plaintiff failed to meet the job requirements, the Board claims that the decision to release Plaintiff and not consider him for the position vacated by Compton was not precipitated by racial animus, but was rather a fulfillment of its established policy not to appoint work release inmates to positions requiring permanent employees. Following Walker's discharge, the Board hired one William Murray, a white male, to fill the position vacated by Compton.[3]

Contrary to the assertion of the Defendants, Plaintiff contends that the Board and Elba have engaged in a pattern and practice of discrimination on the basis of race. Walker claims that his termination was motivated by racial animus. Plaintiff asserts that Defendants engaged in discrimination in the terms and conditions of his employment in the following manner: 1) by paying blacks less than whites for comparable work per-

formed; and 2) by giving whites preferential treatment in the hiring process.

On February 7, 1994, Walker filed a Complaint in this Court setting forth the following causes of action: 1) violation of 42 U.S.C. 1981 and 2000e *et seq.* (hereinafter "Title VII") and 2) tort of outrage. Plaintiff brings this action against the Board and Elba. Although the Board executed the hiring of firing of Walker, Walker contends that the Board is under the control of Elba, which makes Elba liable for the actionable wrongs of the Board. Plaintiff alleges that as a result of Defendants' discriminatory conduct, he has suffered and continues to suffer loss of employment, income, and other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damage to his reputation.

On July 22, Elba and the Board filed a Motion for Summary Judgment. Defendants contend that Title VII is inapplicable to either of them because they may not be deemed Plaintiff's employer. Elba asserts that it neither directs the acts of the Board nor conducts the Board's affairs; therefore, Elba claims that it is entitled to judgment as a matter of law as to its liability for the actions of the Board. Furthermore, Defendants assert that summary judgment is due to be granted in favor of Defendants on Plaintiff's section 1981 claim because this statutory provision applicable only at the contract formation juncture of the employment relationship. Moreover, Elba and the Board claim that they are entitled to judgment as a matter of law on Walker's tort of outrage claim because municipalities are immune from liability for intentional torts.

### Summary Judgment Standard

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party.

---

2. Neither party states with clarity the functions or duties of a "bucket" worker. The best, and only, explanation given by either side is that the position requires working in the "bucket" of a truck.

3. The Court is under the impression that Walker never reapplied for his previous position after Murray was hired. Plaintiff does not allege that he reapplied and was rejected; therefore, that situation is not considered in this memorandum opinion.

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain lànguage of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion & Analysis

### I. City of Elba

Elba asserts that it is entitled to judgment as a matter of law because Walker is neither its agent nor employee. Furthermore, Elba contends that the Board is a separate and distinct entity, which is not operated or controlled by Elba. The Court finds that Elba's assertions are correct and its Motion for Summary Judgment is due to be granted; thus, dismissing it from this action.

■ Elba was not involved in any regard in the hiring or termination of Walker. Furthermore, Defendant Elba neither constructed Plaintiff's work schedule, set Plaintiff's hours nor endorsed any pay checks distributed to Walker. Plaintiff does not adduce any evidence to the contrary. Therefore, the Court finds that Elba was not Plaintiff's employer.

■ The Court also finds that Defendant Elba does not control or operate the Board; therefore, the Elba is not liable for any misfeasance in which the Board engages. The Board is a duly incorporated legal entity existing on its own behalf. Pursuant to paragraph 4 of its Certificate of Amendment to Certification, the Board possesses its own Directors, which conducts the affairs of the Board.[4] Moreover, the Board charges Elba for the supplies and services rendered. In light of the independence and separateness of the Board from the City of Elba, the Court finds that the City of Elba is entitled to judgment as a matter of law; accordingly, its Motion for Summary Judgment is due to be granted.

### II. The Water & Electric Board of Elba

### A. Tort of Outrage/Intentional Infliction of Emotional Distress

■ Walker contends that the Board's conduct of dismissing him caused Plaintiff to suffer emotional distress which entitles him to recover under Alabama's tort of outrage. Specifically, Walker claims that he has suffered undue embarrassment as a result of the Board's wrongful conduct. In the seminal case of *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980), the Alabama Supreme Court announced the following definition for the tort of outrage:

> [w]illful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress and for bodily harm re-

---

4. The original name of the Board was the Water Works Board of the City of Elba. The Board amended its Certificate of Incorporation on August 20, 1951 and assumed its current name.

sulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure....

*Inmon,* 394 So.2d at 365.

Since Inmon, the Alabama Supreme Court has found the forgoing standard sufficiently satisfied as to present a jury question in but a modicum of instances. *See Continental Casualty Insurance Co. v. McDonald,* 567 So.2d 1208 (Ala.1990) (stating "[t]his Court has applied the ... test rather strictly, to hold in a number of cases that alleged conduct did not present a jury question on the tort of outrage"); *Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041 (Ala.1993) ("[t]his Court has consistently held that the tort of outrage is available in only the most egregious circumstances").

After citing numerous cases in which the Alabama Supreme Court that the plaintiff's claim did not present an issue for the jury, the *Thomas* court noted that all the cases in which the Alabama Supreme Court has found a jury question on a tort of outrage claim fall within three categories:

1) cases having to do with wrongful conduct in the context of family burials, *see Whitt v. Hulsey,* 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), *Levite Undertakers Co. v. Griggs,* 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), *Cates v. Taylor,* 428 So.2d 637 (Ala.1983), (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim, *National Security Fire & Casualty Co. v. Bowen,* 447 So.2d 133 (Ala.1983); and 3) a case involving egregious sexual harass-

ment, *Busby v. Truswal Systems Corp.,* 551 So.2d 322 (Ala.1989).

*Thomas,* 624 So.2d at 1044.

The foregoing excerpt from *Thomas* suggests that the Alabama Supreme Court is not predisposed to recognize that tort of outrage claims present jury questions. In fact, the Alabama Supreme Court has noted that in order to demonstrate intentional infliction of emotional distress, or tort of outrage, "the plaintiff must present substantial evidence of 'conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Fitch v. Voit,* 624 So.2d 542, 544 (Ala.1993) (citing *Inmon,* 394 So.2d at 365).

Here, Walker claims that the Board is liable under the tort of outrage for discriminatorily discharging him and embarrassment thereby. Clearly, Plaintiff's cause falls into neither of the categories enunciated by the Alabama Supreme Court in *Thomas.* Moreover, Plaintiff has not presented substantial evidence that the Board's alleged conduct rises to the level of a juryworthy tort of outrage claim. Accordingly, the Court finds that the Board's Motion for Summary Judgment on Plaintiff's claim of tort of outrage is due to be granted.

## B. Title VII

Title VII establishes that it is unlawful for employers to discriminate in the terms and conditions of employment based on race. *See* 42 U.S.C. § 2000e–2. The Board claims that because Walker was a work release inmate it was not Walker's employer and, therefore, Plaintiff may not assert a viable Title VII claim against the Board. Defendant bases its assertion, at least in part, on the fact that the Board remits a portion of Walker's pay to the ADC.

Apparently, the United States Eleventh Circuit Court of Appeals has not determined who is the employer of a work release inmate. However, in *Baker v. McNeil Island Corrections Center,* 859 F.2d 124 (9th Cir. 1988), the court noted that the Equal Employment Opportunity Commission had published a Notice of Policy Statement which stated that Title VII applies to prisoners on

work release. *Baker*, 859 F.2d at 128. Referring to the EEOC's policy, the court also stated that "once a prison recommends a prisoner for work release, the prisoner is seeking an employment opportunity with an employer, and the jail 'becomes a third party who has the ability to control or interfere with the inmate's employment opportunities....'" *Id.* (citing *Mitchell v. Howard Memorial Hospital*, 853 F.2d 762, 767 (9th Cir.1988)).

The court finds *Baker* persuasive and concludes that the ADC is a third party which may affect the employment opportunities of its work release inmates. Therefore, the court finds that the Board was Walker's employer at all material times in this cause.

Defendant further contends that Walker was ineligible for permanent employment because Walker was a work release inmate. The Court construes the Board's argument as a production of a nondiscriminatory reason for dismissing Walker.[5] Defendant presents evidence in the form of affidavits to substantiate its assertion. According to Patricia Boothe, an employee of the Board, the Board only hires work release inmates on a probationary basis (i.e., work release inmates may not acquire permanent employee status while they remain under the control of the ADC).[6]

Contrarily, Walker claims, via affidavit, that he was told by Compton, his supervisor, that after six months with the Board Walker would be eligible for a permanent position.[7] According to Walker's affidavit, he was not made aware that his status as a work release inmate prevented him from attaining permanent or full-time employee status. In his deposition, Walker contends that he received an above average performance evaluation and was then told by Compton that he was considered a permanent employee.

Walker also asserts that he was discriminated against because he received lower pay than his white co-workers, despite performing comparable tasks. Defendant offers nothing in opposition to this assertion. Coupling this with the fact that a genuine issue of material fact exists regarding whether Plaintiff was a temporary employee, the Court finds that Walker has a trialworthy Title VII claim. Therefore, the Court finds that the Board's Motion for Summary Judgment on Plaintiff's Title VII claim is due to be denied.

## C. Section 1981

The Board asserts that Walker fails to assert an actionable 42 U.S.C. § 1981 claim because this provision provides relief only for conduct occurring at the formation of the contractual relationship between the employer and employee. Therefore, Defendant asserts racial termination is not actionable under section 1981. The Board cites *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and *Pearson v. Macon–Bibb County Hospital Authority*, 952 F.2d 1274 (11th Cir.1992) in support of its proposition.

The Board correctly states the law as it existed prior to the passage of the 1991 Amendments to the Civil Rights Act of 1964. However, the 1991 Amendments have ushered in some profound changes in the scope and coverage of section 1981. Pursuant to 42 U.S.C. § 1981(b), the "make and enforce con-

5. Under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), once a plaintiff satisfies his burden of demonstrating *prima facie* discrimination, the defendant must respond with a legitimate, nondiscriminatory reason for its employment decision. Should the defendant fail to satisfy its burden, the plaintiff prevails. Once the defendant articulates a legitimate, nondiscriminatory reason for its employment decision, the burden shifts to and remains with the plaintiff to demonstrate that the proffered reason is merely a pretext for impermissible discrimination. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

6. Although Ms. Boothe asserts that she has personal knowledge of the policies and procedures of the Water and Electric Board of Elba, this policy appears not to be memorialized in a formal document.

7. Pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, nonmovants on a motion for summary judgment may create a genuine issue of material fact by offering affidavits to rebut the moving party's contentions.

tracts" clause of subsection (a) includes "....
the enjoyment of all benefits, privileges,
terms, and condition of the contractual rela-
tionship."[8]

In accord with the 1991 Amendments to
the Civil Rights Act of 1964, the Court finds
that section 1981 is applicable throughout the
employment relationship. Therefore, the
Board's Motion for Summary Judgment on
Plaintiff's section 1981 claim is due to be
denied.

### Conclusion

In light of the findings articulated above,
the Court concludes that: 1) Defendant, City
of Elba's Motion for Summary Judgment is
due to be granted; 2) Defendant's, Water
and Electric Board of the City of Elba, Mo-
tion for Summary Judgment as to Plaintiff's
tort of outrage claim is due to be granted;
and 3) the Board's Motion for Summary
Judgment as to Plaintiff's Title VII and sec-
tion 1981 claims is due to be denied.

A judgment in accordance with this memo-
randum opinion shall be entered separately.

### JUDGMENT

In accordance with the attached memoran-
dum opinion and Rule 58 of the *Federal
Rules of Civil Procedure*, it is CONSID-
ERED, ORDERED and ADJUDGED that
summary judgment on Plaintiff's claims
against the City of Elba be and the same is
hereby GRANTED in favor of Defendant,
City of Elba, Alabama.

It is further CONSIDERED, ORDERED
and ADJUDGED that summary judgment on
Plaintiff's tort of outrage claim be and the
same is hereby GRANTED in favor of the
Water and Electric Board of the City of
Elba.

It is further CONSIDERED, ORDERED
and ADJUDGED that Defendant's Water
and Electric Board of the City of Elba Mo-
tion for Summary Judgment as to Plaintiff's
claims under 42 U.S.C. §§ 1981 and 2000e be
and the same is hereby DENIED.

8. Under 42 U.S.C. § 1981(a), "[a]ll persons with-
in the jurisdiction of the United States shall have
the same right to make and enforce contracts

It is further CONSIDERED and OR-
DERED that all costs incurred herein be and
the same are hereby taxed against Plaintiff
for which let execution issue.

.... to the full and equal benefit of all laws ....
for the security of persons and property as is
enjoyed by white citizens...."