**Bonnie McCASLIN, Plaintiff,**

v.

**CORNHUSKER STATE INDUSTRIES,
et al., Defendants.**

No. 4:CV93–3024.

United States District Court,
D. Nebraska.

Dec. 20, 1996.

Bonnie McCaslin, York, NE, pro se.

Marie C. Pawol, Assistant Attorney General, Lincoln, NE, for Defendants.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

URBOM, Senior District Judge.

This case is before me on the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (5), and (6). (Filing 41.) The plaintiff, Bonnie McCaslin, was incarcerated at the Nebraska Center for Women, a state correctional institution. She brings this Section 1983 action and Title VII claim against Cornhusker State Industries, the Nebraska Department of Correction Services, and various employees of these entities. McCaslin alleges that she was sexually harassed in the workplace by fellow inmates while incarcerated and that the defendants, as her employer, were aware of the actions but failed to take corrective steps, and eventually, terminated her at the behest of the harassers. The defendants have moved to dismiss. After a careful review of this matter I shall grant the defendants' motion and dismiss the plaintiff's complaint.

## BACKGROUND

The plaintiff alleges that she was employed by the Data Entry Division of Cornhusker State Industries as a computer operator while incarcerated at the Nebraska Center for Women (NCW). She claims that her performance in that position was satisfactory or better, that she received raises in salary until she was earning the top-pay rate. McCaslin alleges that in January 1992, she and another Data Entry Division employee, inmate Jo Helen Williams, were in the bathroom alone. At that time Williams said: "I love you. You know that, don't you?" Plaintiff asserts that after Williams realized McCaslin would not reciprocate, the inmate threatened to make the plaintiff's life "as miserable as she possibly could." (Filing 2.)

McCaslin claims that Williams then began harassing her and that due to her dominant personality other inmates also participated. She claims that Williams subjected her to the use of offensive language and persistent statements as to with whom Williams was having sexual contact. Allegedly, in April 1992, Mary Mast, the supervisor at Data Entry, was aware of the harassment the plaintiff was receiving and intervened to some degree, allegedly including a meeting between Williams, her counselor and Mast. This, however, did not eliminate the harassment and the plaintiff contends that Mast was ineffective and failed to control the situation. As a result, McCaslin alleges that Mast allowed her to be sexually, mentally, and emotionally harassed. In July 1992, Williams became the lead operator at Data Entry, allowing her to dispense work to other employees. The plaintiff contends that Williams placed more work on McCaslin's desk than on other employees' desks and she alleges that work quotas were placed on her, while not on other inmate-employees. McCaslin states that she was fired on September 1, 1992, and thus, denied her bonus, her earned paid vacation, and severance pay. She alleges that Mast terminated her at the behest of Williams.

The plaintiff has named as defendants, the Nebraska Department of Correctional Services (NDCS); Cornhusker State Industries (CSI); Tom Mason, CSI Production Manager; and Mary Mast, Supervisor of Data Entry. Harold W. Clarke, Larry Wayne, and the Nebraska Center for Women have been dismissed as parties.

The plaintiff commenced this action on January 6, 1993; one of nineteen separate cases filed that day by McCaslin. She brought two claims in this action, one a due process claim and the other a claim for employment discrimination pursuant to Title VII. The magistrate judge recommended dismissal of the plaintiff's claims for failure to state a claim after McCaslin had been given the opportunity to amend her complaint. (Filing 13.) I adopted his recommendation and dismissed the plaintiff's claims. (Filing 16.) McCaslin appealed to the Eighth Circuit. The Eighth Circuit held that dismissal of McCaslin's claims pursuant to Rule 12(b)(6) before the service of process was improper. *See McCaslin v. Cornhusker State Indus., et al.,* 1995 WL 141732, *1 (8th Cir. Apr. 4, 1995) (unpubl.decision). It concluded that the dismissal of the plaintiff's due process claim was harmless error, but that dismissal of McCaslin's Title VII claim was not. *Id.* at *1–2. The case was affirmed in part, reversed in part, and remanded.

On remand, the magistrate judge recommended dismissal of certain defendants and ordered service of process upon those remaining. (Filing 29.) In filing 33, I adopted the magistrate judge's recommendation. The defendants have been served and the magistrate judge has conducted an initial review of the plaintiff's complaint. The defendants have filed the instant motion to dismiss.

## STANDARD OF REVIEW

The defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), (b)(2) (lack of personal jurisdiction), (b)(5) (insufficiency of service), and (b)(6) (failure to state a claim). *See* FED. R. CIV. P. 12(b). I shall apply the standard of review applicable to a Rule 12(b)(6) in analyzing the plaintiff's action. Pursuant to Rule 12(b)(6), "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set

of facts which would entitle him to relief." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986) (citing *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979)); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). In resolving such motions, all well-pleaded allegations in the complaint must be taken as true. Furthermore, the complaint and all reasonable inferences arising therefrom must be weighed in favor of the plaintiff. *Morton*, 793 F.2d at 187. Because I conclude that the plaintiff does not have a cause of action at law, this court lacks subject matter jurisdiction and the action must be dismissed.

## DISCUSSION

The defendants' argument supporting their motion to dismiss is two-fold. First, they contend that because McCaslin was a prisoner at the time the alleged harassment occurred and employed in a job in the state prison system, she was not an "employee" within the meaning of Title VII and, therefore, may not maintain this action. They also assert that she failed to comply with Title VII's EEOC filing requirements, and for this reason she has also failed to state a cognizable claim under Title VII. Second, the defendants argue that the plaintiff failed to properly serve them [1] and thus, the court lacks jurisdiction over the person. The plaintiff has not responded to the defendants' motion to dismiss.

### Title VII and Prisoners as Employees

In relevant part, Title VII, 42 U.S.C. § 2000e *et seq.* (1994), makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex

...." 42 U.S.C. § 2000e–2(a) (1994). An employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...." 42 U.S.C. § 2000e(b) (1994). "The term 'employee' means an individual employed by an employer ...." 42 U.S.C. § 2000e(f) (1994).

■ Included in Title VII's protections is protection from sexual harassment in the workplace. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The type of sexual harassment at issue in this case, as construed from McCaslin's complaint, is a hostile work environment. A claim for a sexually hostile work environment consists of the following elements: the plaintiff must show that she belongs to the class of persons protected by the statute; that she was subjected to unwelcome acts because of her gender; that the harassment affected the "compensation, terms, conditions or privileges of [her] employment;" and her employer knew or should have known of the harassment but failed to take proper remedial action. *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir.1986).

■ The fundamental question presented in this action is whether the relationship of prison to prisoner, when that prisoner works in the state operated prison-industry, inside the prison, is employer-employee, thereby invoking on behalf of the prisoner Title VII's protections against discrimination. The defendants assert that Title VII's guarantees do not apply to the prison setting where an individual is required to engage in prison employment as a part of his or her rehabilitation and the prisoner works inside the prison and for the state-operated prison industry. They further contend that the relationship

---

1. The defendants contend, rightly, that individuals may only be liable under Title VII as employers and may not be held individually liable as under 42 U.S.C. § 1983. *Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir.1994); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Smith v. Saint Bernards Regional Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir.

1994) (holding Title VII liability does not reach co-workers). In this case, the defendants assert that the defendants Mast and Mason were served in their individual capacities and not as "employers." The plaintiff failed to properly effect service on them under state law. In addition, the defendants argue that the plaintiff failed to comply with Federal Rule of Civil Procedure 4(j) with respect to the governmental entities.

between the prisoner and the prison is not and cannot be one of employer-employee.

Few reported court decisions consider whether prisoners who are employed are protected by Title VII. *See Williams v. Meese,* 926 F.2d 994 (10th Cir.1991); *Baker v. McNeil Island Corrs. Ctr,* 859 F.2d 124 (9th Cir.1988); *Walker v. City of Elba, Ala.,* 874 F.Supp. 361 (M.D.Ala.1994); *Walton v. Federal Prison Indus.,* No. 89–3257–R, 1991 WL 126708 (D.Kan. June 13, 1991) A review of the cases that have is in order. In *Williams,* the plaintiff, a federal inmate, appealed the trial court's dismissal of his complaint for failure to state a claim. Williams alleged that "the defendants denied him certain prison job assignments, for which he was otherwise qualified, solely on the basis of his age, race, or handicap...." *Williams,* 926 F.2d at 996. The Tenth Circuit affirmed the lower court's ruling, stating that:

> Title VII ... [does not] provide[ ] plaintiff any substantive rights because he does not have an employment relationship with the Federal Bureau of Prisons.
>
> Whether a plaintiff is an "employee" for purposes of Title VII is a question of federal law. (citation omitted). We conclude that plaintiff is not an "employee" under ... Title VII ... because his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an employee. Although his relationship with defendants may contain some elements commonly present in an employment relationship, it arises "from [plaintiff's] having been convicted and sentenced to imprisonment in the [defendants'] correctional institution. The primary purpose of their association [is] incarceration, not employment." *Prisoner Not Protected From Racial Job Bias,* 2 Empl. Prac. Guide (CCH) ¶ 6865, at 7099 (April 18, 1986) (EEOC Decision No. 96–7). Since plaintiff has no employment relationship with defendants, he cannot pursue a claim for discrimination against them under ... Title VII....

*Williams,* 926 F.2d at 997.

In *Baker,* the plaintiff, who was a state prisoner, alleged that he was discriminated against on the basis of his race, when he was not hired to be a library aide in the correctional center's library. *Baker,* 859 F.2d at 125. The district court dismissed the plaintiff's action after considering factors typically used in analyzing whether an individual is an employee or an independent contractor under Title VII. *Id.* at 128. The lower court found that while a number of the eleven factors it considered militated against finding the prisoner an employee, the most important factor, the right to control the means and manner of performing the work, "strongly suggests" an employer employee relationship. *Id. See Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979) (applying eleven factors in determining whether an individual is an employee or an independent contractor for Title VII). The lower court also examined the economic realties of the relationship. *Id.* It concluded that these distinguished the prison-prisoner context from an employer-employee one. *Id.* The appeals court concluded that the lower court erred in dismissing the action for failure to state a claim. The court stated that because the most important factor—the right to control how the prisoner does his job existed, and in view of the allegations contained in the complaint, it was improper to dismiss. The appeals court also analogized the prisoner's employment to apprenticeship and job training programs, areas protected by Title VII as well. 42 U.S.C. § 2000e–2(d) (1994). Finally, it concluded that the plaintiff may be an employee but that there were insufficient facts before the court upon which to make that determination. *Id.*

In *Walker,* the plaintiff, a prisoner on work release, claimed that he was discriminated against on the basis of his race in violation of Title VII. *Walker,* 874 F.Supp. at 363. He alleged that he was discharged from his position by the Water & Electric Board of Elba, Alabama, because he was black. He sued the board and the City of Elba as his employers. The defendants contended that because Walker was a prisoner, they were not his employers under Title VII. The district court found that the board was an employer, relying in part on the *Baker* opinion. *Id.* at 364, 365–66. The court also noted that, with respect to prisoners eligible for work release

status, the Equal Employment Opportunity Commission (EEOC) had issued a policy statement that such prisoners are covered by Title VII. *Id.* at 365–66 (citing *Baker*, 859 F.2d at 128 n. 5). .

Finally, in *Walton*, the federal district court in Kansas held that a federal prisoner was precluded from maintaining a claim for race discrimination under Title VII against UNICOR, the Federal Prison Industries, because a prisoner is not an employee of UNICOR. *Walton*, 1991 WL 126708 at *1 (citing *Williams*, 926 F.2d 994). The district court did not find persuasive Walton's effort to distinguish his work for UNICOR, a federal corporation, from Williams' prison work assignment as a librarian. The court dismissed the plaintiff's action. It relied on *Williams v. Meese* in making its decision.

The Eighth Circuit has not addressed the issue of whether a prisoner can be an employee for the purposes of Title VII when employed by the prison as a requirement of the prisoner's incarceration. In *Foster v. Wyrick*, 823 F.2d 218 (8th Cir.1987), the court did not raise this question. In *Foster*, the inmate alleged race discrimination pursuant to Title VII in the assignment of prison jobs to inmates. The lower court entered a directed verdict against Foster on all but one of his Title VII claims. On appeal, the Eighth Circuit held that a prisoner may not bring a Title VII claim pursuant to Section 1983, nor may he or she bring a Title VII claim without having first filed with the EEOC. *Foster*, 823 F.2d at 221–22. Because Foster failed to do so, his appeal on this issue was denied. The court was not faced with whether a prisoner employed by the prison is an employee under Title VII. Nor have I found any other Eighth Circuit opinions on this issue.

In addition to the above cited cases, the EEOC has issued a decision on the applicability of Title VII to prisoners working in state prison jobs. E.E.O.C. Dec. No. 86–7, 1986 WL 38836, 2 Empl. Prac. Guide (CCH) ¶ 6865, at 7099 (April 18, 1986). In that case, a state prisoner alleged that he was removed from his position on the prison compound maintenance crew and was not allowed to apply for another position because of his

race. The EEOC stated that the issue that needed to be decided was "whether coverage of the Act extends to allegations of racial discrimination with respect to work performed by a prison inmate for a state correctional institution during the period of the inmate's incarceration." *Id.* at *1. In its opinion, the EEOC considered the relationship between the prisoner and prison. It found that a number of the *Spirides* factors were highly demonstrative of an employer-employee relationship, but stressed that these "must be considered in light of the total circumstances of the relationship between the [prisoner and the prison]." *Id.* at *2. It went on:

> That relationship arose from the [prisoner's] having been convicted and sentenced to imprisonment in the [State's] correctional institution. The primary purpose of their association was incarceration, not employment. Consequently, the [State] exercised control and direction not only over the [prisoner's] work performance but over the prisoner himself. The conditions under which he performed his job were, thus, functions of his confinement to the [State's] institution under its control. While the [prisoner] received monetary compensation for his work, that compensation was minimal.... Finally, although the [prisoner] was not required to work for the [State], his very job flowed from his incarceration and was dependent on his status as a prison inmate. Considering these circumstances as a whole, we are persuaded that the reality of the work relationship between the [State] and the [prisoner] was not one of employment.

*Id.* at *3. The EEOC opinion went on to bolster its conclusion by noting that its finding in this regard "is consistent with the Department of Labor's interpretation of the term 'employee' under the Fair Labor Standards Act of 1938 [ (FLSA) ], as amended, 29 U.S.C. § 201 *et seq.* (1982)." The EEOC recognized that the FLSA defines "employee" in "virtually the same words as does Title VII" and that in similar circumstances the Department of Labor has not found the prisoner to be an employee protected by Title VII. *Id.* (citation omitted). Furthermore,

such has been the holding of nearly every court that has addressed the FLSA's application to prisoners working in state prisons for prison industries. *See, e.g., McMaster v. State of Minn.,* 30 F.3d 976, 980 (8th Cir. 1994) (holding that FLSA does not apply to prisoners working within the prison for state prison industries); *Franks v. Oklahoma State Indus.,* 7 F.3d 971, 972 (10th Cir.1993) (holding that the minimum wage provisions of the FLSA do not apply to state prisoners working in state prison jobs); *Hale v. Arizona,* 993 F.2d 1387, 1395 (9th Cir.) (*en banc*) (holding prisoners who must work pursuant to state law are not "employees" of the prison for the purposes of the FLSA), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335, (1993); *Vanskike v. Peters,* 974 F.2d 806, 809 (7th Cir.1992) ("[T]he relationship between the [Department of Corrections] and a prisoner is far different from a traditional employer-employee relationship ...."), *cert. denied,* 507 U.S. 928, 113 S.Ct. 1303, 122 L.Ed.2d 692 (1993); *Pierce v. King,* 918 F.Supp. 932, 942 (E.D.N.C.1996) ("This much is clear: no employment relationship of any kind exists between prisoners and their jailors."); *George v. Badger State Indus. (BSI),* 827 F.Supp. 584, 589 (W.D.Wis.1993) (holding FSLA does not apply to forced prison work setting); *Feller v. Clarke,* No. 4:CV93–3368 (D.Neb. Apr. 27, 1995) (holding FLSA does not apply to state prison setting); *Emory v. United States,* 2 Cl.Ct. 579, 580 ("Prisoners are not employees within the meaning of the Fair Labor Standards Act of 1938."), *aff'd,* 727 F.2d 1119 (Fed.Cir.1983). While these cases are not authoritative with respect to Title VII, they are persuasive to me.

Like the FLSA, I do not find that Title VII applies to the prison setting, when prisoners are mandated to work in state-sponsored, prison-run industries. I believe that both the *Baker* and *Walker* cases mentioned above are distinguishable from the instant case. In *Walker,* the prisoner was on work release and working in the private sector outside the prison. In addition, as noted by that court, the EEOC had issued a policy statement that work release prisoners were covered by Title VII. In *Baker,* it seems that the prisoner's work assignment was voluntary and not mandated by statute. In the event it was mandated by statute, I respectfully disagree with the Ninth Circuit's ruling, finding that the Tenth Circuit's later decision in *Williams v. Meese* is the better rule to apply in the prison context, when viewed in light of EEOC Decision 86–7 and the myriad cases on the FLSA's application to prisons.

The relationship between prisoner and prison is not voluntary; it arises out of the prisoner's conviction for a crime and his or her sentencing to a period of incarceration. *Williams v. Meese,* 926 F.2d at 997. It is not one of employer-employee. Instead, it is one of jailor-jailed. The prisoner does not enter into a bargain with the prison to become a prisoner in order to be able to work in the prison industries, as might a private individual who contracts with an employer. *McMaster v. Minnesota,* 30 F.3d at 980 (quoting *McMaster v. Minnesota,* 819 F.Supp. 1429, 1437 (D.Minn.1993)); *Sigler v. Lowrie,* 404 F.2d 659, 661 (8th Cir.1968), *cert. denied,* 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969) (holding compensation for prison labor is "by grace of the state"). Nor is the prisoner permitted to work or not work at his or her choosing. State law mandates that "persons committed to the department shall be employed, eight hours per day, so far as possible in constructive and diversified activities in the production of goods, services, and foodstuffs to maintain the facilities, for state use, and for other purposes authorized by law." NEB. REV. STAT. ANN. § 83–183(1) (Michie 1995); U.S. CONST. amend. XIII (providing for involuntary servitude upon being duly convicted of a crime). There was no choice on her part whether to work or not work. In addition, prison personnel classify prisoners for types of positions within the prison and the work is performed within the confines of the prison facility itself, making it difficult or impossible to delineate the limits of the workplace.

In *Wilde v. County of Kandiyohi,* 15 F.3d 103 (8th Cir.1994), the Eighth Circuit adopted with respect to Title VII, the holding from the Supreme Court's decision in *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), regarding who may be classified as an em-

ployee. In that case the Court held that where a statute does not helpfully define the term "employee," courts should not imply a meaning that is broader than the common law definition. *Nationwide Mut. Ins. Co,* 503 U.S. at 322–23, 112 S.Ct. at 1347–48. The Supreme Court stated that it will presume Congress intended a common law definition for the term "employee" unless Congress clearly indicates otherwise. *Id.* at 324–25, 112 S.Ct. at 1348–49. Application of this or a similar test applied to the prison context has been found to be irrelevant in that setting. *Vanskike v. Peters,* 974 F.2d at 809–10. The test is normally used to determine if the relationship involves enough control to distinguish between employees and independent contractors for the purpose of determining the applicability of federal labor laws. *Wilde,* 15 F.3d at 105–06. The difficulty with it and other tests as applied to prisons, is that they focus on the control aspects of the relationship. That is one of the purposes of prison—to control individuals who have been unable or unwilling to control themselves. In fact, the prison's control over the prisoner is nearly absolute and necessarily must exist. The prison's control over the prisoner's work is incidental to its control over the prisoner. As noted in *Vanskike,* "there is obviously enough control over the prisoner; the problematic point is that there is **too much** control to classify the relationship as one of employment.... [Prisoners] are working as part of their sentences of incarceration." *Vanskike,* 974 F.2d at 810.

In reliance on *Williams v. Meese,* E.E.O.C. decision 86–7, and the cases dealing with the FSLA, I conclude that Title VII does not apply to the prisoner working in the state prison, for the state prison industry as part of his or her sentence.

## Service of Process

■ The defendants also contend that there was insufficient or defective service of process on the individual defendants, the plaintiff having served Mast and Mason in their individual capacities only and, for that reason, this court does not have jurisdiction over the persons of these defendants. The defendants' argument is along these lines:

the defendants Mast and Mason were served individually and not in their official capacities; Title VII does not impose individual liability for its violation; therefore, these defendants are not properly before the court in this action. (Defs.' Br. in Supp. of Mot. to Dismiss at 10–12.) In other words, the defendants do not contest the plaintiff's service on them as individuals, but that because as individuals they cannot be liable under Title VII, they should have been served in their official capacities.

The Federal Rules of Civil Procedure govern the service of process in cases originally brought in federal court. Rule 4(e) provides the general rule for service upon an individual within a judicial district of the United States. As noted above, Mast and Mason do not contest this service on them as individuals. They do, however, contest the service on them as employees of a state agency. Federal Rule of Civil Procedure 4(j)(2) provides that service of process on a state or one of its governmental organizations may be effected by delivery of the summons to the chief executive officer of the state or organization sued or as prescribed by the law of the state for the service of such an action against the state or other governmental entity.

In this case the plaintiff did not serve the chief executive officer of the NDCS or CSI. Therefore, she was required to comply with the Nebraska law governing the service of process on a state agency found in NEB. REV. STAT. ANN. § 25–510.02 (Michie 1995). Pursuant to that statute, in order to properly serve defendants Mason and Mast in their official capacities, she was required to leave "the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail service addressed to the office of the Attorney General." *Id.* A review of the summonses issued for Mason and Mast indicate that they were not served at the office of the Attorney General, or in accord with the other requirements of the statute. Instead they were served at the headquarters of CSI and the Nebraska Center for Women, respectively. For that reason, service was defective or inadequate.

■ While a defect in service may result in the dismissal of the improperly served person, a court has broad remedial power to correct the service, *Haley v. Simmons,* 529 F.2d 78, 79 (8th Cir.1976), especially where justice demands and prejudice would not result to the improperly served parties. One of the remedial options is the quashing of service but retention of the case so that service may be effected in accord with the Rules. *C & L Farms, Inc. v. Federal Crop Ins. Corp.,* 771 F.2d 407, 409 (8th Cir.1985); *Haley v. Simmons,* 529 F.2d at 79. Therefore, had the plaintiff stated a claim upon which relief might otherwise be granted, I would not hesitate to quash service and direct its reissuance. However, in light of my ruling that the plaintiff has no cause of action at law, I need not issue such an order.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss, filing 41, is hereby granted.

## JUDGMENT

In accordance with the memorandum and order on defendants' motion to dismiss for failure to state a claim,

IT IS ORDERED that this action is dismissed with prejudice.