RICHARD L. HOLMES, Retired Appellate Judge.
Betty Perkins Richardson appeals from a summary judgment entered in favor of Mutual Savings Life Insurance Company (insurance company). This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
We would note at the outset that in a case such as the present ease, an appellate court must view the record in a light most favorable to the non-moving party, and it must resolve all reasonable doubts against the moving party. McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957 (Ala.1992).
Our review of the record reveals the following pertinent facts: In October 1991 the insurance company issued insurance policies on the life of Richardson and on the life of Richardson’s son, Rochester Perkins.
Richardson’s sister, Geraldine Hall, was the individual who obtained these life insurance policies. Hall paid the premiums for these policies and was named as the beneficiary on both of these policies. Neither Richardson nor Perkins was present when the insurance company’s agent completed the applications for these policies. The insurance company’s agent left the applications with Hall in order for her to obtain the signatures of Richardson and Perkins.
The agent did not witness either Richardson or Perkins sign the applications, and he did not obtain the consent of either Richard *770 son or Perkins to issue the life insurance policies. Subsequently, the agent picked up the signed applications, and after the insurance company issued the policies, the agent delivered the policies to Hall. Neither Richardson nor Perkins was aware of the existence of these life insurance policies.
In December 1991 Charles Perkins, a brother of Richardson and Hall, shot and killed Rochester Perkins. Thereafter, the administratrix of Perkins’s estate filed a wrongful death action against the insurance company and State Farm Life Insurance Company. In January 1994, during the course of her deposition in the wrongful death action, Hall admitted that she had forged both Richardson’s and Perkins’s names on the applications for the insurance policies. The insurance company sent Hall a letter, dated October 14, 1994, canceling the life insurance policy on Richardson’s life.
On October 14, 1994, Richardson filed a complaint against the insurance company, alleging the tort of outrage. The complaint alleged the following, in pertinent part:
“3. In a deposition taken by counsel for [the insurance company] on January 28, 1994, the named beneficiary, [Hall], admitted that she had forged [Richardson’s] name to the application for insurance on [Richardson’s] life. Despite this knowledge, [the insurance company] continued to leave the policy on the life of [Richardson], naming [Hall], the admitted forger, as beneficiary, and continued to collect premiums from [Hall] on the subject policy through the date of the filing of this complaint.
“4. The conduct of [the insurance company], in allowing a policy to remain in existence on the life of [Richardson] after learning that [Richardson’s] signature was forged by [Hall], and after learning that the son of [Richardson] was murdered by [Hall’s] brother, is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society. [The insurance company], for the sake of profit only, has, by its outrageous conduct, placed the life of [Richardson] in jeopardy and, in essence, has placed a bounty on [Richardson’s] head.
“5. As a consequence of the outrageous misconduct of [the insurance company, Richardson] has suffered severe emotional distress; she has been placed in grave fear of her life; and she has been caused to endure anxiety of a kind to which no person should be subjected.”
The insurance company filed an answer, admitting the factual allegations of the complaint, but denying that its conduct was outrageous and denying that Richardson had suffered any injury as a result of its conduct.
Subsequently, the insurance company filed a summary judgment motion, along with a brief and other materials in support of its motion. Richardson filed a response and materials in opposition to the summary judgment motion.
After a hearing the trial court issued an order, entering a summary judgment in favor of the insurance company. This appeal followed.
The dispositive issue on appeal is whether the trial court committed reversible error when it entered a summary judgment in favor of the insurance company.
In Jackson v. Alabama Power Co., 630 So.2d 439, 440 (Ala.1993), our supreme court, citing American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1980), stated that the elements of the tort of outrage are as follows:
“(1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) that the defendant’s conduct was extreme and outrageous; and (3) that the defendant’s conduct caused emotional distress so severe that no reasonable person could be expected to endure it.”
The trial court’s order stated the following, in pertinent part: •
“[T]his court finds that [Richardson] has not produced substantial evidence as to any element of the cause of action for the tort of outrage. There is no evidence that [the insurance company] intended to inflict emotional distress on [Richardson]; and *771 there is insubstantial evidence that [the insurance company] knew or should have known that the alleged conduct was likely to cause emotional distress to [Richardson], [Richardson] never communicated any such distress to [the insurance company], either personally or through her own attorneys. Further, the alleged conduct of [the insurance company] does not measure up to the minimum threshold that a defendant must cross in order to commit outrageous conduct. It is plain from a review of [Richardson’s] complaint and the parties’ briefs that the allegedly outrageous conduct occurred between January 28, 1994, when [Hall] admitted to the forgery of [Richardson’s] signature on her policy application, and October 12, 1994, when [the insurance company] canceled the policy. [Richardson] claims that [the insurance company] should have canceled the policy ‘promptly’ upon learning of the forgery.
“During this period, however, both parties were represented by counsel and although [Richardson] was not a named party in the lawsuit filed by the estate of Rochester Perkins, given that Rochester was [Richardson’s] son, her relationship with [the insurance company] at the time may certainly be characterized as adversarial. The allegedly tortious conduct of [the insurance company] in this ease, which took place in the context of ongoing litigation, does not rise to the level of outrageous conduct.
“Viewing the evidence before this court in a light most favorable to the non-movant [Richardson], as required by law, there is not substantial evidence that the conduct of [the insurance company], under the circumstances, was extreme and outrageous. Therefore, the court expressly finds that (1) there is no genuine issue of material fact, and (2) the moving party is entitled to a judgment as a matter of law.”
Both the trial court and the insurance company place great emphasis on the fact that Richardson never contacted the insurance company to request that the insurance policy on her life be canceled or to communicate her distress to the insurance company regarding the issuance of the policy. Richardson testified in her deposition that she learned of the existence of the life insurance policies sometime after her son’s death. Richardson further testified that although she contacted one of the insurance company’s offices and informed the insurance company that her sister had taken out a policy on Richardson’s life without Richardson’s knowledge or signature, Richardson was unsuccessful in obtaining any response on the part of the insurance company.
Steven O’Shea, the insurance company’s vice president and director of claims, admitted in his deposition that if a policy is issued without the consent of the insured, the policy would be either void or voidable, unless ratified by the named insured, and that Richardson never ratified the policy. O’Shea also admitted that the insurance company was aware of the ill feelings between Richardson and Hall and of the fact that Richardson’s attorneys contended that Hall had some involvement in the murder of Richardson’s son.
However, we would note that even in light of the above-stated circumstances, the insurance company, after learning of the forged signature on the application, made no effort to contact Richardson regarding whether she wished to ratify the policy or to cancel the policy. The only action taken by the insurance company after learning of the forged application was to continue to accept premiums on the policy.
O’Shea testified as follows regarding the insurance company’s decision to cancel the policy:
“Q. Okay. When did you reach that conclusion [that Richardson did not want the policy in force]?
“A. In October 1994 in connection with the other [wrongful death] case, we were asked to produce some premium payment records concerning [Richardson’s] policy. We produced those and it was clear that the policy was still in force. My concerns were still the same as when I first got the letter about it. So I hadn’t heard anything from anybody about whether the insured wanted it to stay in force or wanted to cancel or didn’t care. So, I consulted with our counsel, and we decided that the best thing to do was just to cancel it on the *772 basis that I advised [Hall in the October 14, 1994, letter — that Richardson did not sign the application for the policy; she did not give permission for the policy to be applied for; and that she does not wish the policy to remain in force],
“Q. Why did it take you — why did it take you over nine months to reach that conclusion?
“A. It was a $5,000 policy on one sister forged on an application concerning another sister. We were working on a major piece of litigation. We did want to give the insured and her representatives a reasonable amount of time to decide if they wanted to communicate anything to us. We did not set a fixed period of time to wait. It was just simply the next occasion that it came to my attention that this policy was still in force.”
In light of the above, there exists a genuine issue of a material fact as to whether the insurance company should have known that emotional distress was likely to result from its conduct and as to whether the insurance company’s conduct was extreme and outrageous, which resulted in severe emotional distress. Consequently, the trial court improperly entered the summary judgment in favor of the insurance company. The judgment of the trial court is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.