We granted the defendant Mutual Savings Life Insurance Company's petition for a writ of certiorari to the Court of Civil Appeals to review that court's judgment reversing the trial court's summary judgment in favor of Mutual Savings on Betty Richardson's tort-of-outrage claim.
 I.
In October 1991, Mutual Savings issued insurance policies on the lives of Betty Richardson and her son, Rochester Perkins. The policies were issued to Richardson's sister, Geraldine Hall. Hall paid the premiums for the policies and was named as the beneficiary on both policies. Neither Richardson nor Perkins was present when the Mutual Savings agent completed the applications for the policies. The insurance agent left the applications with Hall in order for her to obtain the signatures of Richardson and Perkins. The agent did not witness the signature of either Richardson or Perkins on the applications, and he did not obtain the consent of either of them for Mutual Savings to issue the insurance policies on their lives. Subsequently, the agent received the signed applications from Hall, and after Mutual Savings had issued the policies the agent delivered the policies to Hall. Neither Richardson nor Perkins was aware of the existence of these policies on their lives.
In December 1991, Charles Perkins, the brother of Richardson and Hall, killed Rochester Perkins. Thereafter, the administratrix of Rochester Perkins's estate filed a wrongful death action against Mutual Savings. In January 1994, during the course of her deposition in the wrongful death action, Hall admitted that she had forged the signatures of both Richardson and Perkins on the applications for the insurance policies.
Nine months later, Mutual Savings sent Hall a letter, dated October 14, 1994, notifying her that the life insurance policy on Richardson's life had been cancelled. On the same date, Richardson sued Mutual Savings, alleging that Mutual Savings had committed the tort-of-outrage.
Mutual Savings filed a motion for a summary judgment, which the trial court granted. Richardson appealed; the Court of Civil Appeals reversed the summary judgment for Mutual Savings. Richardson v. Mutual Savings Life Ins. Co.,698 So.2d 769 (Ala.Civ.App. 1996).
 II.
In reviewing the disposition of a motion for summary judgment, we utilize the same standard the trial court used in determining whether the evidence before it "made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. *Page 774 Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
 III.
In Thomas v. BSE Industrial Contractors, Inc.,624 So.2d 1041, 1043-44 (Ala. 1993), this Court elaborated on the burden of proof a plaintiff must carry in order to recover for the tort of outrage:
 "This Court first recognized the tort of outrage, or intentional infliction of emotional distress, in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981). In Inmon, the Court held that to present a jury question the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. The Court defined the second element of the tort of outrage as follows: 'By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' Inmon, 394 So.2d at 365 (quoting Restatement (Second) of Torts, § 46 cmt. d, at 72 (1948)).
". . . .
 "This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was presented."
(Citations omitted.)
Viewing the evidence in a light most favorable to Richardson, we must consider whether she presented substantial evidence from which reasonable persons could find that the actions of Mutual Savings amounted to outrageous conduct and caused her severe emotional distress. Richardson alleged that Mutual Savings did the following acts, which she says amounts to outrageous conduct: (1) That it placed her life at risk by issuing a life insurance policy, in violation of its own rules, on her life, to a beneficiary who had forged her name to the application, and (2) that it allowed the policy to remain in effect while collecting premiums for nine months after Hall had admitted, in sworn testimony, to forging Richardson's signature on the policy application. Additionally, she contends that Mutual Savings performed such acts in spite of its knowledge that Hall's brother had killed her son after Hall had obtained a life insurance policy with Mutual Savings on the son by also forging his signature. In response, Mutual Savings denies these allegations and asserts that Richardson did not produce substantial evidence of any element of the tort-of-outrage cause of action.
In deposition testimony, a representative of Mutual Savings testified as follows regarding its decision to cancel the policy:
 "Q. Okay, When did you reach that conclusion [that Richardson did not want the policy in force]?
 "A. In October 1994 in connection with the [wrongful death] case, we were asked to produce some premium payment records concerning [Richardson's] policy. We produced those and it was clear that the policy was still in force. My concerns were still the same as when I first got the letter about it. So I hadn't heard anything from anybody about whether the insured wanted it to stay in force or wanted to cancel or didn't care. So, I consulted with our counsel, and we decided that the best thing to do was just to cancel it on the basis that I advised [Hall in the October 14, 1994, letter — that Richardson did not sign the application for the policy; that she did not give permission for the policy to be applied for; and that she does not wish the policy to remain in force].
 "Q. Why did it take you — why did it take you over nine months to reach that conclusion?
 "A. It was a $5,000 policy on one sister forged on an application concerning another sister [sic]. We were working on a major piece of litigation [the wrongful *Page 775 
death case]. We did want to give the insured and her representatives a reasonable amount of time to decide if they wanted to communicate anything to us. We did not set a fixed period of time to wait. It was just simply the next occasion that it came to my attention that this policy was still in force."
Based on these facts and on this Court's high standard with regard to the proof necessary to substantiate an outrage claim, we hold that the conduct of Mutual Savings cannot be characterized as "atrocious and utterly intolerable in a civilized society." Inmon, at 365. While it is apparent that there was some delay in Mutual Savings' decision to cancel the policy, a delay that some might view as unreasonable, we cannot conclude that Mutual Savings' conduct went beyond the bounds of decency. Moreover, we conclude that Richardson did not present substantial evidence that Mutual Savings' delay caused her to suffer extreme emotional distress. In light of this, we hold that the trial court properly concluded that Mutual Savings was entitled to a judgment as a matter of law on Richardson's tort-of-outrage claim. Accordingly, we reverse the judgment of the Court of Civil Appeals reversing the summary judgment, and we remand this cause to that court for further proceedings or an order consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.