Demple Lila Johnson (employee) appeals from a summary judgment entered in favor of Inez Fambrough and Bill Fambrough, d/b/a Fambrough Drapery and Design Center (employer).
On June 28, 1995, the employee filed a complaint against the employer, alleging the tort of outrage, or intentional infliction of emotional distress. Specifically, the employee alleged the following: She worked for the employer from 1986 until January 3, 1995; during that time the employer had approximately 4 to 8 employees; the employee was the only black employee; during that period of time the employer intentionally made derogatory statements about the employee's race, creating a hostile work environment for the employee; and she is disabled as a result thereof and is unable to work because of the mental distress from which she suffers.
On February 9, 1996, the employer filed a motion for a summary judgment, which the trial court granted on September 3, 1996.
The employee appeals. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher,636 So.2d 682 (Ala.Civ.App. 1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact.Porter, 636 So.2d 682.
Substantial evidence has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). *Page 741 
Initially, we note that our supreme court, in Thomas v. BSEIndustrial Contractors, Inc., 624 So.2d 1041, 1043 (Ala. 1993), stated the following well-settled law regarding the tort of outrage:
 "This Court first recognized the tort of outrage, or intentional infliction of emotional distress, in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.[1980]). In Inmon, the Court held that to present a jury question the [employee] must present sufficient evidence that the [employer's] conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. The Court defined the second element of the tort of outrage as follows: 'By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' Inmon, 394 So.2d at 365 (quoting Restatement (Second) of Torts, § 46 cmt. d, at 72 (1948)).
". . . .
 "This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was presented."
(Citations omitted.) See Ex parte Mutual Savings Life InsuranceCo., 698 So.2d 772 (Ala. 1997) (our supreme court, in relying on Thomas, supra, affirmed the summary judgment for the defendant).
Thus, the dispositive issue on appeal is whether the employee presented substantial evidence that the employer intentionally, or recklessly, engaged in conduct so extreme and outrageous as to constitute the tort of outrage, and if so, then whether the employer's conduct caused the employee to suffer emotional distress so severe that no reasonable person could be expected to endure it. See American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1980).
On appeal, the employee contends that the employer used the word "nigger" (hereinafter referred to as the "n" word) in the employee's presence or in the presence of other employees on six different occasions. The employee stated that those incidents occurred in October 1986, in July 1990, in the summer of 1990 or 1991, in September 1991, in March 1994, and in April 1994. The employee also contends that on January 3, 1995, the employer compared her to a "chimpanzee."
For the following reasons, this court concludes that we will focus solely on the incident which, the employee alleges, occurred on January 3, 1995: The employee testified in her deposition that the employer never called her the "n" word. Instead, the employer's alleged use of the "n" word was directed at inanimate objects or used in the form of an adjective. For example, on one occasion the employee alleged that the employer yelled out to the employee and stated, "[h]ey . . . look at this 'n' word picture." The employee further testified that she, too, often used the "n" word while at work. The following testimony was elicited from the employee:
"Q. You yourself used the ['n'] word?
 "A. Oh, yeah, it's going to slip out — [the 'n' word].
 ". . . . "A. . . . That is the reason why I did not say nothing to [the employer] because it [has] slipped out of my mouth — [the 'n' word]."
We note that we make no conclusion as to whether the employee presented substantial evidence that the employer's use of the "n" word was, in fact, extreme and outrageous. Rather, we conclude that the employee failed to provide any substantial evidence that the employer's use of the "n" word caused her, in any way, to suffer severe emotional distress. In fact, the employee's testimony appears to indicate that she condoned the employer's use of the "word." We further note that while the employee may well have condoned the use of this offensive and abusive word, this court does not in any context condone the use, by anyone, of this "word." *Page 742 
The employee reiterated throughout her deposition testimony that the gist of her complaint was based on the incident that occurred on January 3, 1995. The employee testified as follows:
"Q. Okay. What happened on January the 3rd?
". . . .
 "A. . . . I asked [the employer], 'Inez, right before I get off,' I said, 'I want to run out here and crank my little car so it [can] be getting warm.' [The employer] asked me again and I repeated myself. After I repeated myself, [the employer] said, 'You will be jumping up just like a chimpanzee — a chimpanzee.' . . . Inez, when you said that, it did something to me for the rest of my life.
". . . .
 "Q. On January the 3rd when this incident was supposed to have happened, was [your employer] mad at you about something?
"A. No. It just slipped out.
 "Q. Okay. Was [your employer] saying that intending to insult you, you think?
". . . .
 "Q. . . . She never said anything like that before to hurt your feelings or make you mad, did she?
"Q. No."
We note that the employee testified that she would still be working for the employer if the above-stated incident had not occurred. We also note that the employee's own testimony reveals that the employer's comment or statement was not intentional.
It is important at this point to note that the tort of outrage "does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " Inmon, 394 So.2d at 364-65 (quotingRestatement (Second) of Torts § 46, Comment d, at 73 (1965)).
The employer testified and denied the allegation that she had called the employee a chimpanzee. The employer's account of her conversation with the employee is as follows:
 "A. Okay, [the employee] and Katherine Smith [were] folding drapes on [the employee's] ironing table and I walked through. And [the employee] says . . . 'Inez, I think I'll go out and start my car and get it warm.' And I just jokingly said — I said, 'Oh, Lila, don't be a pansy,' meaning don't be fragile. 'The cold won't hurt you.' But I did not care for her going out and warming her car."
Katherine Smith, the co-employee and the only witness to the conversation, stated the following in her affidavit: She plainly heard the employer tell the employee, in a joking manner, " 'oh, Lila don't be such a pansy' "; the employee had a tendency to misunderstand and/or to misinterpret things that she heard; the employee's personality was such that she would often get mad at herself; the employer actually treated the employee better than the other employees; and the employer always defended the employee.
Kecia Simmons, another co-employee, stated in her affidavit that the employee had a tendency to misunderstand and to misinterpret things that she heard. Simmons stated the following in her affidavit:
 "I was at work on January 3, 1995, but did not hear the conversation in question. However, the next morning when I came into work, [the employee] approached me and asked me if I had heard that [the employer] had called her . . . a name the day before. I said, 'no what.' [The employee] started trying to tell me what . . . [the employer] had called her. At first I did not understand what name she was trying to say. She kept on trying to say the name but could not pronounce it and finally she gave up and said, 'you know that word for a monkey.' I said you mean a 'chimpanzee,' to which [the employee] responded yes."
Betty Mae Gardner, another co-employee, testified in her deposition that she never saw or heard the employer do anything that was deliberately calculated to hurt the employee. She explained that the employer treated the employee better than the rest of the employees.
Dr. Fredric W. Feist, the employee's psychiatrist, testified that the employee suffered from depression and anxiety as a result of *Page 743 
the incident. However, Dr. Feist testified that he did not perform any psychological testing on the employee. Instead, his diagnosis was based on subjective criteria, which consisted mainly of his conversations with the employee. Feist stated that the employee had a similar problem with depression in 1978 and that he had admitted her to a hospital for treatment. The following testimony was elicited from Feist:
 "Q. Well, isn't it unreasonable to try to say that all the anxiety and depression that [the employee] may . . . or may not be suffering now is associated with the one event that she claims that she heard the word chimpanzee?
". . . .
 "A. I think from the average person, yes. And, again, this is based upon the person's stress tolerance level."
After reviewing all the testimony in a light most favorable to the employee, we conclude that the employee apparently did suffer some distress. However, we conclude that the employee's distress was not so "severe" as to support recovery for the tort of outrage.
Based on the foregoing, we conclude that the trial court properly entered the summary judgment in favor of the employer.
Consequently, the judgment of the trial court is due to be affirmed.
We would also note that on appeal, the employer requests an award of attorney fees under the Alabama Litigation Accountability Act, pursuant to Ala. Code 1975, § 12-19-272. Section 12-19-272(c) states that the trial court may grant such an award "upon the motion of [the] party or on its own motion." The record reveals that the employer did orally request relief pursuant to § 12-19-272 during the summary judgment proceedings. However, the record is silent as to whether the trial court considered the employer's request. And, even more importantly, the employer, on appeal, does not raise an issue regarding the trial court's denial of its requested relief. The employer merely asks this court to grant relief under the act. This court, however, does not have the jurisdiction to grant relief under that act. It is the duty of this court to review the trial court's decision, if the employer presents it as an issue on appeal. This, the employer failed to do.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.